# THE EVANSVILLE AND CRAWFORDSVILLE RAILROAD COMPANY v. DUNCAN.

RAILROADS.—INJURY TO PASSENGER.—Complaint in two paragraphs for an injury to a passenger upon a railroad train. In the first paragraph the duty of the company to use due care and diligence to carry the plaintiff to her destination was alleged, and the breach of duty complained of was that the plaintiff, having been carried safely to the proper station, in a box car, was required by the conductor to jump from the car to the ground, no steps being provided for the safe descent of passengers, whereby plaintiff was injured. The second paragraph was like the first, except that nothing was said as to the kind of car in which the plaintiff was transported, nor as to the want of steps for descent, nor as to any order by the conductor. In this paragraph, the breach of duty was alleged to consist in stopping the train before the car in which the plaintiff was, had reached the platform of the depot, by reason of which plaintiff was compelled to jump from the car, &c.

Held, that both paragraphs stated a good cause of action.

Held, also, that it is not necessary for the pleader to aver the nature of the

contract or the duties of the carrier in such cases, but the court will judicially take notice of the duties which are annexed by law to the contract to carry.

INSTRUCTIONS.—NEGLIGENCE.—An instruction by the court to the jury in such case, to the effect that if the want of proper care or skill on the part of the conductor caused the injury, the defendant would be liable, was held not to be erroneous, taken in connection with another instruction to the effect that if the plaintiff was guilty of negligence in jumping from the car, she could not recover.

RAILROADS.—OBLIGATION TO PROVIDE TRANSPORTATION.—A railroad company is not bound to receive an unusual number of passengers, beyond the number it might reasonably be required to provide for, but if it does receive them, without condition, or notice of its inability to provide for their safety, it assumes all the obligations usually incumbent upon a carrier.

PASSENGERS.—LEAPING FROM CARS.—In a suit for an injury to a passenger, caused by leaping from a box car while the train was stopped at the station to which the plaintiff had taken passage, no means of descent being provided, it was held that an instruction to the effect that if the plaintiff leaped from the car without being in peril, or having reason to believe that she was in peril, and the injury thereby resulted, she could not recover, was correctly refused, because it did not contain the further element that the circumstances were such that the plaintiff might reasonably have apprehended injury from the leap.

SAME.—The evidence in the case disclosing that the plaintiff leaped from the cars merely to prevent being carried on, and that she was at the time warned that it was dangerous, and so thought herself, it was held that she could not recover, she having contributed to the injury by her negligence.

APPEAL from the *Gibson* Common Pleas.

FRAZER, C. J.—This was a suit by the appellee against the appellant. The complaint was in two paragraphs, to each of which a demurrer was filed by the defendant, and overruled. An issue was then made by the general denial, the trial of which resulted in a verdict of $725 for the plaintiff, upon which, over a motion by the defendant for a new trial, judgment was rendered.

The first paragraph of the complaint avers that the defendant was a carrier of passengers by railroad for hire, from *Princeton* to *Fort Branch*; that on, &c., the plaintiff, at the defendant's request, became and was received as a passenger from the former to the latter place, &c.; "and there-

upon it then and there became and was the duty of the said defendant to use due and proper care and diligence that the plaintiff should be safely and securely carried and conveyed, by and upon said railroad and cars, on the said journey from the town of *Princeton* aforesaid to the town of *Fort Branch* aforesaid." But in alleging a breach of this contract on the part of the appellant, the appellee, in this paragraph, after alleging that the appellant "did not use diligence," in general terms, goes on to allege that the appellant "suffered and permitted the plaintiff to be carried and conveyed on said journey in a certain box or stock car, destitute of platform steps or ladders, by means of which said plaintiff could with safety descend from the same, and also suffered and permitted the locomotive and train of cars aforesaid to stop before the said car wherein the plaintiff was a passenger, as aforesaid, had arrived at the platform or depot at the town of *Fort Branch* aforesaid, and then and there, by its agent or conductor, ordered and commanded the plaintiff to get off said car, but wholly neglected to provide steps, ladders, platforms or other means of descent for the use of the plaintiff, or to use due and proper care and diligence for the safety of the plaintiff in that behalf, and by reason thereof the plaintiff was compelled to leap from the side of the car aforesaid to the ground, by means whereof, and without the fault or negligence of the plaintiff, one of the ankles of the plaintiff became and was fractured and broken, and she was otherwise greatly bruised and injured." Damages, special and general, were claimed for the injury.

The second paragraph is substantially the same as the first, except that it says nothing about the kind of car in which the plaintiff was conveyed to *Fort Branch*, or the want of any steps or ladders by which she could descend; and, also, excepting the allegation in the first paragraph, that the appellee was ordered by the appellant's "agent or conductor" to get off the train. The allegation in this paragraph of a breach of the contract is that the "train

was, by and through the carelessness, negligence and improper conduct of the said defendant, stopped at the town of *Fort Branch* aforesaid before that part of the said last mentioned train on which the plaintiff was a passenger had reached the platform or depot, and the plaintiff by reason thereof was compelled to jump from said car to and upon the ground, by means whereof, and without the fault or negligence of the plaintiff, the ankle of the plaintiff became and was fractured," &c.

It is argued, as to both paragraphs:

1. That no breach of the contract alleged is shown, the contract alleged being only to carry safely to *Fort Branch*, which was fully performed.

2. That the injury appears to have resulted from the rash conduct of the plaintiff herself.

Both paragraphs were, in our opinion, good. As to the second objection, it is sufficient to say that we do not understand from the averments that the rash conduct of the plaintiff produced the injury. The other objection needs a more careful examination. The pleader undertook, unnecessarily, we think, to state the duties which became incumbent upon the carrier in consequence of having received the plaintiff as a passenger from place to place, and failed to state the very duty, the neglect of which produced the injury, to-wit, that of providing a safe mode of exit from the car. These duties are annexed by law to the contract to carry, and we are of opinion that the court will judicially take notice of them, without any averment as to what they are. *Dudley* v. *Smith*, 1 Camp. 167, was decided upon this principle. Though the duties of the carrier in reference to a passenger arise out of the contract between them, yet the suit may be in tort, because the duties of the carrier are raised by law. 1 Chit. Pl. 135, *et seq.* Under the code it is, in such a case as this, unnecessary to aver the nature of the contract, or the duties resulting from it. Form 14, 2 G. & H. 377.

The evidence showed that the injury to the plaintiff re-

sulted from jumping from the box car in which she was carried, while the train was standing at *Fort Branch.* The distance to the ground was about four feet. She jumped in what was deemed by other witnesses a critical place, alighting upon a cross-tie, and thereby fractured her ankle. Provision for safe descent had been made on the other side of the car, but whether before or after her exit is not clear; but she, with many others, did not at any rate observe it. Nobody else was hurt. There was some excitement and haste about disembarking as the train was behind time, the bell was ringing as a signal to get out, and it was understood that passengers for that station must get out quickly or they would be carried on. She thought the car too high to jump from, and was warned not to jump, but nevertheless did so. No proper provision was made for passengers to get out of the box cars. The only evidence in relation to a command by the conductor to get out was, that he said: "All off for *Fort Branch;* if you do not get off you will be taken to *Evansville.*" The conductor, testifying as a witness, denied having used any such language. The occurrence took place on the 4th of *July.* The defendant was provided with sufficient passenger coaches for all ordinary business, but not enough for such an occasion, and hence used freight cars. There were celebrations at *Fort Branch* and *Evansville,* and there was an unusual number of passengers.

The court gave to the jury the following instruction, claimed by the appellant to be erroneous:

"If the jury find there was no want of proper skill, or care, or caution, on the part of the defendant or agent, and that the injury was caused by the act of the plaintiff in rashly and improperly springing from the car, then the defendant is not liable in this action; but if from the want of proper skill and care of the conductor, or other person in charge of the train, or if he was guilty of rashness, negligence or misconduct which placed the passengers in a state of peril in descending from the car, the defendant is liable

for any injury resulting from his acts, and the plaintiff is entitled to recover."

It must be stated in this connection that the jury was also instructed that if the plaintiff was guilty of negligence in jumping from the car, whereby she was injured, then the verdict should be for the defendant, even if the defendant was also guilty of negligence. While the instruction complained of was defective, standing alone, yet that defect was fully supplied by the additional instruction stated, and we cannot suppose that the jury disregarded the latter.

The appellant complains also of the refusal of the court to instruct the jury as follows:

"If the jury believe from the evidence that the cars, platforms and means of descent provided by the defendant, were at the time sufficient for the ordinary travel on the road, then there would be no negligence in not providing means and platforms for the accommodation of an unusual number of passengers, unless it appear that reasonable notice had been given to provide such accommodations."

We do not think that this instruction should have been given. The defendant was not bound to receive an unusual and unexpected number of passengers, beyond what it was bound to provide for with safe accommodations. But having received them, without qualification or condition, or notice of its inability to provide for their safety, it seems to us that it assumed all the obligations usually incumbent upon a carrier of passengers, and became liable for the consequences of a failure to perform those obligations.

The following was also refused:

"If the jury find from the evidence, that the plaintiff leaped from the car without being in peril of life or limb, or having reason to believe that she was in such peril, and by so leaping received the injury, then the verdict should be for the defendant."

We cannot say that it was error to refuse this instruction in this particular case. If the evidence had shown a leaping from a train when in rapid motion, or if the case put

by the instruction had included the element that the plaintiff had leaped from the car under such circumstances that peril to herself might reasonably be apprehended in consequence of the leap, then to make the leap would be a want of reasonable care on her part, and she could not recover. The instruction, however, assumes that leaping from a car under any circumstances, without a purpose to avoid thereby an apprehended peril to life or limb, would relieve the carrier from liability. We do not so understand the law. If the leap was made under such circumstances that a person of ordinary caution and care would not have apprehended danger therefrom, then it was not such an act of carelessness as would relieve the defendant from the responsibility otherwise resting upon it.

It is contended that the evidence was not sufficient to support the verdict. There never should be any just occasion for a reversal of a judgment by this court upon the evidence alone; and it is with the greatest reluctance, and always with a caution so great as to border very closely upon the unreasonable, that we can relieve against this error of the court below, consistently with the rule by which this court has always governed itself in the matter.

In this case, the fact comes from the plaintiff herself, testifying as a witness, that for the mere purpose of avoiding being carried to *Evansville,* she voluntarily made what she regarded as a dangerous leap, and what all other witnesses expressing an opinion upon the subject also regarded as involving peril. This she did, notwithstanding she was warned at the moment not to do it. Thereby she received the injury for which she sues. Upon these points there is no conflict of evidence. The injury occurred thus, if it occurred at all, and these facts are true, if anything in the case is true. There is no room for a question as to the credibility of the witnesses who so testify, for the plaintiff herself is the chief of those witnesses. This, plainly, was a want of ordinary care on her part, directly contributing to the injury; and in such a state of case the law is equally

clear that the plaintiff cannot recover.    Under such circumstances, we cannot hesitate to reverse the judgment.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*A. C. Donald,* for appellant.

*W. M. Land,* for appellee.