The Jeffersonville, Madison, and Indianapolis R. R. Co. v. Hendricks, Adm'r.

———————◇———————

THE JEFFERSONVILLE, MADISON, AND INDIANAPOLIS R. R. Co.
v. HENDRICKS, ADMINISTRATOR.

PRACTICE.—*Rules of Court.*—*Security for Costs.*—*New Corporation Succeeding Old.*—*Liabilities.*—*Statute of Limitations.*—Where a rule of court requires " an application for security for costs to be made before answering to the complaint, unless answer is made in ignorance of the non-residence, or the plaintiff has become a non-resident since answering," an application on an affidavit which does not disclose the existence of either exception is properly overruled, when the application is first made after the cause has been once tried. Such a rule of court is not repugnant to the laws of this State, unjust,

The Jeffersonville, Madison, and Indianapolis R..R. Co. *v.* Hendricks, Adm'r.

or unreasonable, and is therefore valid. Where a new trial has been granted, and a new corporation, having succeeded to the rights and liabilities of an old one, is substituted as defendant, the rule will apply to the new corporation, and prevent it from making such application, on the re-trial of the cause, although new issues have been formed. The new corporation is liable as the old, and can make no defence that the old one could not make. If the statute of limitations could not bar the action for the old corporation, it cannot avail the new company.

SAME.—*Amendment.*—*Motion to Strike Out.*—Where an amendment to a complaint is made, the question whether the amendment makes a new cause of action, which is barred by the statute of limitations, cannot be raised by motion to strike out the amendment.

COMPLAINT.—*Amendment.*—*New Cause of Action.*—*Statute of Limitations.*—Where a cause of action by an administrator against a railroad company, as stated in the complaint, was the death of the plaintiff's intestate, caused by the wrongful act or omission of the company, without the fault of the deceased, the particular means or manner of her death not being stated, on a demurrer's being sustained to the complaint, because it did not appear that the injury producing death was not caused by the contributing fault of the deceased, it was not stating a new cause of action, liable to objection as not being brought within the time limited by the statute, to amend the complaint so as to allege the facts of the accident more particularly. It would be a new cause of action, if the amendment contained a recital of facts connected with some other and different accident and date. The cause of action was the wrongful act of the company and the question of fact was what the wrongful act consisted of.

PRACTICE.—*Identical Paragraphs.*—*Motion to Strike Out.*—*Harmless Error.*—If two paragraphs of a complaint are identical, it is a harmless error for the court to refuse to strike out one of the paragraphs on motion, for that reason.

RAILROAD.—*Injury to Passenger.*—*Fault of Passenger.*—*Negligence of Railroad Company.*—A paragraph of the complaint in such an action, which alleged that the injury was caused by "defendant not having stopped the motion of the cars a sufficient length of time to allow the deceased to safely and securely leave the cars, but having so far checked the motion thereof that she could safely leave the same, while she was in the act of leaving, suddenly started the train again without giving her a reasonable time to get off, and without want of ordinary care on her part she was thrown violently from the train of cars, and the platform of the depot was so negligently constructed that the foot of said deceased was caught in a hole thereof, and she was run over by the said train," etc., was not liable to the objection that it did not show that the deceased was free from negligence, but did affirmatively show that she was guilty of contributing to the injury received. The allegation that the injury occurred "without want of ordinary care on the part of the decedent," was equivalent to an averment that the injury occurred "without the fault or negligence of the plaintiff." The additional averment was made, "that the defendant was not present in person or by her servants or agents to assist the

deceased from the cars." These averments of the paragraph showed that the deceased was without fault in attempting to leave the train. She had a right to expect the cars to remain stationary long enough for her to step from the train, and to expect the servants of the defendant to be present to assist her.

SAME.—*Statute.*—*Non-Residents.*—*Constitutional Law.*—Section 784, 2 G. & H. 330, was intended to provide a remedy, not only for the resident citizens of this State, but for the citizens of the several states while passing through or residing within this State. Section 2, article 4, of the constitution of the United States, would secure the benefit of this section to citizens of other states, if refused by our law.

SAME.—*Foreign Administrator.*—*Action by.*—*Trust for Benefit of Widow and Children.*—A foreign administrator can maintain an action in this State against a defendant for having wrongfully caused the death of a person. The administrator will hold the money recovered, in trust for the benefit of the widow and children of the deceased. OSBORN, J., dissented from the conclusion that a foreign administrator may bring the suit.

SAME.—*Widow and Children.*—*Averment in Complaint.*—It is sufficient to allege in the complaint and prove on the trial, that there are persons who are entitled under the statute to the damages. It is not necessary to name the persons or to amend the complaint so as to state the fact, in the event of the death of any of those persons, leaving heirs, after suit brought.

APPEAL from the Bartholomew Circuit Court.

BUSKIRK, J.—This is the second appearance of this cause in this court. It will be found reported in 26 Ind., commencing on page 228, and ending on page 234. When the case was here before, the judgment of the court below against the appellant was reversed, upon the ground that the complaint did not sufficiently show that the deceased did not cause or contribute to her death by her own negligence. In pursuance of the opinion and judgment of this court, the court below sustained the demurrer to the complaint, and thereupon the appellee filed an amended complaint in two paragraphs.

The first paragraph of the amended complaint avers, omitting the formal parts, that said decedent took passage on the Jeffersonville Railroad, at Jeffersonville, for Columbus, Indiana, on the 31st day of March, 1863; that the agents of said company, in charge of said train, not mindful of their duty and the obligation of the company to safely and securely carry and deliver said decedent at said Columbus,

wholly neglected and refused to do so, but on the contrary, "by their servants and agents, so carelessly, negligently, and unskilfully managed said train of cars, at and near the usual and common place of delivery of passengers at said Columbus, that through said carelessness, negligence, and want of attention of the defendants and their agents and servants, and without want of ordinary care on the part of said Rebecca, said Rebecca was unable to safely and securely get out of and leave said cars at said Columbus; and neither the conductor, nor any other of said defendants, or their agents or servants, were present to assist said Rebecca to safely and securely get from and leave said cars at said Columbus, notwithstanding they well knew that said Rebecca was old and infirm; and the defendants then and there wholly neglected and refused to stop the motion of said cars a sufficient length of time, and allow said Rebecca sufficient opportunity safely and securely to leave said cars, but having stopped said train, and while said Rebecca was in the act of getting off, suddenly started the same again, without allowing her a reasonable time for that purpose, by means of which said Rebecca, in endeavoring to leave said cars, without want of ordinary care on her part, fell and was thrown with great violence from said cars on to the platform, between the platform of the cars and the platform of the depot, at said Columbus, and across the iron rail of said railway track, and was then and there instantly killed," etc.

The second paragraph of the amended complaint, omitting the formal portions, charges that on the 31st day of March, 1863, said Rebecca took passage on, etc., for, etc., as in the first paragraph of complaint; that said defendant failed to deliver said Rebecca safely at Columbus, but on the contrary, "at and near the usual place of delivering passengers at said Columbus, said defendant not having been present, in person, or by their agents or servants, to assist said Rebecca to get from and leave said cars, and said defendants not having stopped the motion of said cars a sufficient length of time to allow said Rebecca to safely and securely

leave said cars, but having so far checked the motion thereof that said Rebecca could safely leave the same, and while she was in the act of leaving, suddenly started said train again without allowing said Rebecca a reasonable time to get off; said Rebecca, in attempting to leave said cars, without want of ordinary care on her part, was thrown violently from said train of cars, and the platform of the depot was so negligently constructed that the foot of said Rebecca caught in a hole thereof, and she was run over by said cars," etc.

The complaint, as amended, was filed on the 4th day of December, 1867. Upon the filing of the amended complaint, the defendant filed the affidavit of Horace Scott, general superintendent of defendant's road, setting forth the non-residency of appellee; also the affidavit of Howard Lee, a witness for appellee, to the same effect; and requesting that appellee be required to give bond for costs; and moved the court that appellee be required to give bond for costs; which motion was overruled by the court, and the defendant excepted. And the defendant then, on said affidavits, moved the court that appellee be required to give bond for all further costs in the case; which motion was overruled, and exception taken. Defendant then, on said affidavits, moved the court to dismiss said action for want of bonds for costs as above; which motion was overruled, and exception taken by appellant.

Defendant then moved the court to strike out the second cause of action, as amended, for the reason that the amendment made a new and different cause of action, which did not accrue within two years before the filing of said amended cause of action; which motion was overruled, and defendant excepted. Defendant then moved the court to strike out that part of the second cause of action constituting the amendment, for the reason above given; which motion was overruled and excepted to. Further motions were made, overruled, and exceptions taken, to strike out said amendment, for the reason that it was immaterial and surplusage, and to

strike out said second cause of action, because it was substantially the same as the first cause of action.

To all of which rulings proper exceptions were taken and reserved by bills of exceptions.

The defendant demurred separately to the first and second paragraphs of the complaint, for the want of sufficient facts. The demurrers were overruled, and the defendant excepted.

The defendant filed an answer in two paragraphs to the first paragraph of the complaint, and an answer in three paragraphs to the second paragraph of the complaint.

The first paragraphs are in denial, and the second paragraphs aver that, at and before the time of her decease, said Rebecca was a citizen and resident of the State of Kentucky, and that plaintiff was, at the time of her death, her husband, and was then, and still is, a citizen and resident of Kentucky, and that his letters of administration herein were granted in Kentucky, and that no letters of administration of said estate had ever been granted in the State of Indiana.

The third paragraph of the answer to the second cause of action sets up that said cause of action accrued more than two years before the filing of said paragraph of complaint.

Demurrers were filed and sustained to the second and third paragraphs of the answer, and proper exceptions were taken by the defendant.

The action was commenced and prosecuted up to this point, the 27th day of April, 1869, against the Jeffersonville Railroad Company, when the appellee filed a supplemental complaint, alleging that since the commencement of the action, the said Jeffersonville Railroad Company and the Indianapolis and Madison Railroad Company had consolidated by articles of association, and become a new corporation by the name of The Jeffersonville, Madison, and Indianapolis Railroad Company, and asked that the new corporation be substituted as defendant in the action, which was refused, but the court ordered that said Jeffersonville, Madison, and Indianapolis Railroad Company be made defendant in place of

the original defendant. Whereupon the appearance of appellant was entered, and motions were made, based upon affidavits of the non-residency of appellee, to require him to give bond for costs, which were overruled and exceptions taken; also to require him to give bond for future costs, with like result, and to dismiss for want of bond for costs, and for want of bond for future costs, which motions were overruled, and exceptions taken.

Afterward, appellant filed a third paragraph of answer, as follows: And for third paragraph of answer herein, this defendant says that the defendant became a corporation, as alleged in plaintiff's said supplemental complaint, on the 1st day of July, 1866, by consolidation of said Jeffersonville Railroad with the Madison and Indianapolis Railroad Company, and said Jeffersonville Railroad Company then ceased to be a corporation, or to have any existence. And the plaintiff, after said day, could not have and maintain any action for and on account of said alleged death of said Mrs. Hendricks against said Jeffersonville Railroad Company, but said action, by said consolidation, abated, and said Jeffersonville, Madison, and Indianapolis Railroad Company then and there, by virtue of said consolidation, became alone solely responsible to plaintiff for and on account of plaintiff's alleged cause of action, and to be sued therefor in this or another action, and defendant says that more than two years had elapsed since said consolidation of said roads, and since plaintiff's alleged cause of action accrued against this defendant before the filing of said supplemental complaint, making this defendant the party defendant herein, and more than two years had elapsed from the time of the alleged death of said Mrs. Hendricks before making this party defendant herein.

A demurrer was filed and sustained to the above answer, and the defendant excepted.

There was a trial by jury, and verdict for plaintiff, assessing his damages at two thousand seven hundred and fifty dollars. The jury also returned answers to interrogatories.

There was a motion for a new trial overruled, and exception taken, and final judgment on the verdict of the jury.

The appellant has assigned the following errors:

First. The court erred in overruling the several motions of appellant to require appellee to give bond for costs, for future costs, and to dismiss the action for the want of such bonds.

Second. That the court erred in overruling the several motions of appellant relative to the second cause of action, to strike out parts thereof, and the whole of it, for reasons therein assigned.

Third. The court erred in overruling the demurrer to the first paragraph of amended complaint.

Fourth. The court erred in overruling the demurrer to the second paragraph of amended complaint.

Fifth. The court erred in sustaining the demurrer to the second paragraph of the answer to the first paragraph of the complaint.

Sixth. The court erred in sustaining the demurrer to the second paragraph of the answer to the second paragraph of the complaint.

Seventh. The court erred in sustaining the demurrer to the third paragraph of the answer to the second paragraph of the complaint.

Eighth. The court erred in sustaining the demurrer to the third paragraph of the answer to the supplemental complaint.

Ninth. The court erred in overruling the appellant's motion for a new trial.

There are eleven other assignments of error, but they present no question for our decision, as they are a mere repetition of the reasons for a new trial, and are all embraced by the ninth assignment of error, and will be noticed as the reasons for a new trial, when we reach the ninth assignment of error.

We will dispose of the assignments of error in the order in which we have stated them.

The first assignment of error calls in question the correct-

ness of the ruling of the court below in overruling the motion to require appellee to give a bond for cost, and in refusing to dismiss the action for the want of the bond.

The issue was joined on the complaint. There was a trial by jury, a verdict for plaintiff, motion for a new trial overruled, and judgment on the verdict. From this judgment there was an appeal to the Supreme Court, and a reversal of the judgment for the want of a sufficient complaint. The cause was remanded to the court below, which sustained the demurrer to the complaint. The appellee then filed an amended complaint. Thereupon the appellant made an application, supported by affidavit, to require the appellee to give security for costs. The motion was overruled. Was this error? It is shown by the record that there was at the time this action was commenced a rule of the court below "requiring applications for security for costs to be made before answering to the complaint, unless answer is made in ignorance of the non-residence, or the plaintiff has become a non-resident since answering." It is not shown in the affidavit, or insisted on in argument, that the appellant was either ignorant of the existence of the above rule, or that the plaintiff was a non-resident at the time the original answer was filed, nor is it shown or claimed that the plaintiff became a non-resident after the answer was filed. The appellant does not come within any of the exceptions to the rule. It is claimed by counsel for appellant, that "the rule is an unreasonable, arbitrary, and harsh rule—one not fit to be made."

The fourteenth section of the act organizing circuit courts provides, that the said courts shall adopt rules for conducting the business therein, not repugnant to the laws of this State, etc. 2 G. & H. 8.

The duty of the circuit courts to adopt rules for conducting the business therein is imperative, and the only limitation as to the character of the rules is, that they shall not be repugnant to the laws of this State. This court, in *Redman v. The State*, 28 Ind. 205, held a rule of court valid which provided, that "an application to change the venue will not

be entertained after the day the cause is docketed for trial, nor will such application be entertained after the party making the same has applied for a continuance which has been overruled," upon the ground that it was not repugnant to the laws of this State, and such ruling was adhered to in *Galloway* v. *The State*, 29 Ind. 442. See *Whittem* v. *The State*, 36 Ind. 196, and *Truitt* v. *Truitt*, 38 Ind. 16.

The language of the statute upon this subject, after providing that non-resident plaintiffs shall give bonds for costs, is, that "the suit shall not be dismissed for want thereof, if the plaintiff will file, in open court, upon being ordered to do so, such undertaking," etc. 2 G. & H. 228, sec. 402.

A rule might be "repugnant to the laws of this State," which was not in conflict with any statute of the State. A rule which would deprive a party of any right secured to him by the constitution or the principles of the common law in force in this State would be repugnant to the laws of this State. A rule of court should be reasonable, and adapted to a prompt and just administration of justice. The statute requires many things to be done, without prescribing the time when, or the manner in which, they shall be done, such as granting continuances and changing the venue, and the filing of pleadings, or the like. It is also competent for the court to determine by rule when an application for security for costs shall be made. If the court below had adopted a rule that "no application for security for costs should be made after an answer had been filed," we should have regarded such a rule as unreasonable and repugnant to every principle of justice, and therefore repugnant to the laws of this State; for under such a rule a defendant might answer honestly, believing that the plaintiff was still a resident of the State, when in fact he had become a non-resident of the State, without the knowledge of the defendant, before he had commenced his action, or he might remove from the State after an answer had been filed. The rule of the court below properly guards against such contingency. We cannot see that any injustice is done to a defendant who has full knowl-

edge that the plaintiff is a non-resident of the State, but answers the complaint without asking an order for security for costs, by depriving him of the right of making an application for such order afterward.

We are referred to the case of *Griggs* v. *Voorhies*, 7 Blackf. 561, as an authority in point in favor of appellant. We do not think so, for several reasons. In that case there was no rule of court prescribing the time when such an application should be made, as there is in this. In that case the court say: "Before the defendant pleaded, he moved for a rule on the plaintiffs to show cause why they should not give security for costs, founded on an affidavit stating that they were not residents of the State of Indiana," while, in the case in judgment, the application was not made for about four years after the defendant had pleaded to the complaint.

Besides, there is a significant change of language in the enactment of 1852, above referred to, from that used in the act of 1843, under which *Griggs* v. *Voorhies*, 7 Blackf. 561, was decided. In the act of 1843 it is provided, that the action shall not be dismissed if the bond is filed in open court "within such time as the court shall deem reasonable." R. S. 1843, p. 675, sec. 33. In the act of 1852 it is provided, that the action shall not be dismissed, if the plaintiff files his bond "upon being ordered to do so." The only discretion given to the court by the act of 1843 was as to the time of filing bond. By the act of 1852, the action cannot be dismissed until the plaintiff fails to comply with an order of the court requiring it to be filed.

This leaves it in the power of the court to refuse to make the order at all, and hence to prescribe under what circumstances it would so refuse. It would certainly be more just and proper toward all parties coming before the court that they should understand, by a general rule of the court, entered of record, and open to the inspection of all, under what circumstances the court would refuse to make the order, than to leave it for determination in each case whether the order should be made or refused.

In our opinion, the rule in question was neither repugnant to the laws of this State, unjust, nor unreasonable, and was therefore valid.

But it is claimed that even under this rule appellants had the right to demand the bond for costs at any time before answering to a good complaint, and as this court had held the complaint defective, appellants had the right to insist upon the bond at any time before answering to a complaint which should be held sufficient.

It is a complete answer to this position, that the rule makes no such provision. The rule requires the motion to be made before filing answer, and if, as in this case, the defendant chooses to answer an insufficient complaint, he cannot say that he has not filed an answer in the action. Furthermore, the spirit of the rule, the reason of it, and for its propriety, as shown above, all are against such a position.

But it is still further insisted by counsel for the appellant, that when the appellant was made a party, in place of The Jeffersonville and Indianapolis R. R. Co., she had the right to insist upon security for costs.

By the articles of consolidation of the Indianapolis and Madison and the Jeffersonville railroad companies, which are in the record, it is expressly stipulated that "all debts and liabilities, of whatever name and description, of each of said original companies, shall be assumed by said Jeffersonville, Madison, and Indianapolis Railroad Company, and faithfully observed and discharged, in the same manner as the said original companies respectively were bound to observe and discharge the same." The liability of the Jeffersonville company for the death of plaintiff's intestate, if any there be, existed long before this consolidation, and by the above stipulation, the new company created by the consolidation assumed its payment and discharge, to all intents and purposes, the same as if no consolidation had taken place. Appellant's counsel insists that, by the very act of consolidation itself, the old Jeffersonville company ceased to exist, for all purposes whatever, and he speaks of it as an extinct corporation. Now,

for the sake of the argument, take his position as correct, and yet no such consequence follows from it, as he claims. It certainly will not be pretended that this consolidation was attended with consequences more unfavorable to plaintiff than the death of a natural person defendant. In such case, the administrator would be substituted and the cause proceed, with the rights of the parties fixed up to the death of defendant. If the decedent could not have required security for costs at the time of his death, neither can the administrator after his substitution. This, we think, is manifest. Now, in the case at bar, there is no death or other casualty beyond the control of the parties affecting this case; but with full notice of the pendency of this action, which the law presumes, The Madison and Indianapolis Railroad Company agrees with the Jeffersonville company to combine their two separate corporate existences into a new corporation, and stipulates that all liabilities shall be discharged in the same manner as the original companies were bound to discharge them. Thus, by the very terms of the contract creating the new company, they have placed it in all respects in precisely the same situation, as to this case, in which the original Jeffersonville company stood; and hence it had no right to demand security for costs, if that company had none.

We are fortunately not without authority as to the legal effect of the consolidation of two or more railroad companies. The question was for the first time presented to this court in the case of *The I., C., & L. R. R. Co.* v. *Jones*, 29 Ind. 465. The court say: "By the consolidation, both of the old companies ceased to exist separately, and all their effects and franchises were vested in the new company. The two corporations became merged in one. We cannot imagine how the Indianapolis and Cincinnati Railroad Company could afterward be sued. Upon whom would process be served? It ceased to have any officers or agents. It ceased to be a separate legal entity. Instead of two, there was now but one corporation, made up of the mingled elements of the two pre-existing companies, so combined and merged

The Jeffersonville, Madison, and Indianapolis R. R. Co. *v.* Hendricks, Adm'r.

that neither could be separately identified, or brought into court. But what are the rights of creditors and persons upon whom torts have been committed by the vanished corporations? A dead man may have an administrator to represent his estate and answer to suits, but a corporation lawfully disappearing thus, has no estate to be administered. Its assets have lawfully vested in the new consolidated corporation. Must lawful claims be lost, then? That result cannot follow. The legislature has chosen to make no provision upon the subject, and the industry of counsel, as well as our own examination of the books, has failed to discover any direct authority upon the question before us. The analogies of the law, too, afford little aid in its solution. We regret to be compelled to decide it without a more thorough argument. Giving it, however, the best consideration of which we are capable under the circumstances, we have reached the conclusion that, for the purposes of answering for the liabilities of the constituent corporations, the consolidated company should be deemed to be merely the same as each of its constituents, their existence continued in it, under the new form and name, their liabilities still existing as before, and capable of enforcement against the new company in the same way as if no change had occurred in its organization or name. The doctrine seems to spring from the necessities of justice, and, so far as we are able to foresee, cannot result in wrong or embarrassment."

The question again came before the court, in the case of *Paine* v. *The Lake Erie & L. R. R. Co.,* 31 Ind. 283, where the court say: "It is clear to our minds, that the new company succeeded to the rights of the old corporations. The new was composed of the elements of the old; it was the same under a new form. It is only a play upon words to say, that phœnix-like the new arose from the ashes of the old. There was no turning to ashes necessary in the process. It only required a commingling of the elements of which the old was composed. The new assumed the liabilities and succeeded to the rights of the old."

The next assignment of error presents for review the refusal of the court to sustain the motions of the appellant, first, to strike out the second cause of action entire, as amended; second, to strike out the interlineations; third, to strike out the interlineations and restore the erased words; and fourth, to again strike out the second paragraph as amended entire, but for different reasons than those assigned for the first motion; all of which were overruled, and the appellant excepted.

The reason assigned in support of the first two motions is, "that the amendment made a new and different cause of action, which did not accrue within two years before the filing of said amended cause of action." The purpose of the appellant was to raise the question of whether the cause of action set up in said paragraph was barred by the statute of limitations. This cannot be done by a motion to strike out. The statute of limitations must be pleaded whenever there is an exception in the statute. In such case it cannot be raised by demurrer, although it appears upon the face of the complaint that the action is barred. The reason of the rule is, that the plaintiff should have the right to reply the exception. *Bowman* v. *Mallory*, 14 Ind. 424; *Matlock* v. *Todd*, 25 Ind. 128; *Boyd* v. *Boyd*, 27 Ind. 429; *Perkins* v. *Rogers*, 35 Ind. 124.

But where there are no exceptions to the statute, and the facts appear upon the face of the complaint, the question can be raised by demurrer. *Hanna* v. *The Jeffersonville Railroad Company*, 32 Ind. 113.

The appellant "moved to strike out the second cause of action, as amended, because the interlineation therein by way of amendment of the original complaint, which reads as follows: 'was so negligently constructed that the foot of said Rebecca caught in a hole thereof, and she,' with the erasure of the following words, by way of said amendment, to wit, 'upon the track and,' makes a new and different cause of action, and without said interlineation, and with said erased words restored, said second cause of action is the same, and

not different from the first cause of action, and more than two years had elapsed since said alleged cause of action accrued when said amended complaint was filed."

The first reason assigned in support of the above motion is, that the second paragraph of the complaint, as amended, set up a new and different cause of action from that contained in the first paragraph of the complaint, and that such new cause of action had not accrued within two years.

The learned counsel for appellant has furnished us a very able and elaborate brief, but it seems very manifest to us that he has entirely misconceived the legal effect of the amendments made to the second paragraph of the complaint. His entire argument on that subject is based upon the assumption that the second paragraph of the complaint, as amended, stated a new and different cause of action from that set up in the original complaint. In our judgment, the assumption is unsupported by the facts as they appear of record. In our opinion, the cause of action, as set forth in the two paragraphs of the complaint, as amended, is the same as, and identical with, that set forth in the original complaint. It is neither new nor different. The cause of action, as set forth in the original and amended complaints, was the death of Mrs. Hendricks, caused by the wrongful act or omission of The Jeffersonville Railroad Company, and without fault on her part, and not the particular means or manner of her death. This court reversed the former judgment of the court below, in this case, because it did not sufficiently appear in the original complaint that she did not contribute to her own death. When the cause was remanded, the court below sustained a demurrer to the complaint. The appellee then amended the complaint by stating more fully and clearly the facts and circumstances, as they existed at the time of the death of the decedent, for the purpose of showing that the death of the decedent was caused by the wrongful acts of the appellant, and without the want of ordinary care on the part of the decedent. The new facts stated relate to the time and fact of the death of the decedent, as alleged in the orig-

inal complaint. The position of the counsel for appellant would be correct if the new facts stated related to a time and transaction different from the one set out in the original complaint. The cause of action arose, if at all, the moment the death was caused by that company's wrongful act, and it then only became a question of fact, and hence of evidence, what really was the wrongful act. It might have been by an improper management of the train, a want of proper attention in assisting her to leave the train, want of light at the depot, or a defective and insecure platform at the depot acting as a trap to catch passengers alighting from the train in the night. Or instead of being any one of these causes singly, a part or all of them may have combined to produce the result. Yet they were, any or all, but simply the means in causing the death, for which the company is responsible. Hence it would have been manifest error to have stricken out any one of no matter how many allegations of means causing the death; and consequently the court did right to overrule all motions aimed at accomplishing that object.

The reason assigned in support of the fourth motion is, that the second paragraph of the complaint, as amended, was the same as the first. We do not think so. There is an allegation in the second paragraph of the complaint in regard to the negligent construction of the platform of the depot that is not in the first. But conceding that the paragraphs were the same, it would be a harmless error for the court to refuse to strike it out. *Cheek* v. *Glass*, 3 Ind. 286; *Lamson* v. *Falls*, 6 Ind. 309; *Van Pelt* v. *Corwine*, 6 Ind. 363; *Thomas* v. *White*, 11 Ind. 132; *Pennington* v. *Nave*, 15 Ind. 323.

In our opinion, the court below committed no error in overruling the motions of the appellant above set out.

The third assignment of error is based upon the action of the court in overruling the demurrer to the first paragraph of the amended complaint. The counsel for appellant has not pointed out, in argument, any objection to such paragraph, and we have been unable to discover any, and, there-

fore, conclude that the court committed no error in overruling the demurrer thereto.

The fourth assignment of error calls in question the correctness of the ruling of the court in overruling the demurrer to the second paragraph of the amended complaint. The principal ground upon which it is argued that this demurrer should have been sustained is, that the count does not show that there was no want of negligence on the part of deceased, but affirmatively shows negligence by showing that she left the train while it was in motion. The language of this paragraph on that subject is as follows:

"Said defendant not having stopped the motion of said cars a sufficient length of time to allow said Rebecca to safely and securely leave said cars, but having so far checked the motion thereof that said Rebecca could safely leave the same, while she was in the act of leaving, suddenly started said train again without allowing the said Rebecca a reasonable time to get off; said Rebecca in attempting to leave said cars, without want of ordinary care on her part was thrown violently from said train of cars, and the platform of the depot was so negligently constructed that the foot of said Rebecca was caught in a hole thereof and she was run over by the said train," etc.

The allegation above, admitted by the demurrer to be true, is that the motion of the train was so far checked that deceased could safely leave the same. If she could safely leave, so far as any risk from the motion of the train was concerned, then she ran no risk, and it was not negligence on her part to make the attempt. It would be a contradiction of terms to say that it was negligence on her part to undertake to do what she could safely do. We are aware of the general doctrine of this court and of other courts, that it is negligence for a passenger to attempt to leave a train while it is in motion. But this doctrine must be applied with some reason, and not carried to absurd extremes. It will certainly not be contended, or at least sanctioned by any court,

that when a train of cars has arrived at any depot where the trains of the company always stop, and the motion of the train' has so far ceased that a passenger can securely leave the train, so far as any risk from the motion of the train is concerned, the least possible perceptible motion of the train renders it negligence in the passenger to leave the train, and deprives him of any right of action for an injury in no way resulting from, or attributable to, the motion of the train when he attempted to leave, but entirely from a defect in the platform for landing, which he had a legal right to presume perfect, and from a sudden starting of the train after he attempted to leave, all which dangers were increased by the absence of any light to enable him to discover and shun that and other dangers.    Fortunately we are not without authority upon this subject from this court.

In *The Evansville and Crawfordsville R. R. Co.* v. *Duncan*, 28 Ind. 441, this court, on page 447, in sustaining the refusal of the lower court to give an instruction, says:   "The instruction, however, assumes that leaping from a car under any circumstances, without a purpose to avoid thereby an apprehended peril to life or limb, would relieve the carrier from liability.   We do not so understand the law.

"If the leap was made under such circumstances that a person of ordinary caution and care would not have apprehended danger therefrom, then it was not such an act of carelessness as would relieve the defendant from the responsibility otherwise resting upon it."

When this case was in this court before, the court, in speaking of the question of whether it was sufficiently alleged in the complaint that the deceased did not contribute to her own death, said:   "It is carelessness in passengers to attempt to leave the train whilst it is in motion."   It seems to us that the above proposition of law was too broadly stated, and should have been qualified.   The law as stated by this court, in *The E. & C. R. R. Co.* v. *Duncan, supra,* is a reasonable and proper modification of the law as laid down in this case heretofore.

The Jeffersonville, Madison, and Indianapolis R. R. Co. *v.* Hendricks, Adm'r.

It is in the next place insisted by counsel for the appellant that the averments in the said paragraph of the complaint are not sufficient to show an absence of contributory negligence on the part of the decedent.

This court, in the case of *The E. & C. R. R. Co.* v. *Dexter*, 24 Ind. 411, in discussing what averments, as to contributory negligence on the part of plaintiff, had to be made in the complaint, laid down the law thus: "The averment must be either expressly made in the complaint, that the injury occurred without the fault or negligence of the plaintiff, or it must clearly appear from the facts which are alleged, that such must have been the case."

We will first inquire whether there is an express averment that the injury occurred without the fault or negligence of the decedent. It is averred in the complaint that the injury occurred "without the want of ordinary care on the part" of the decedent. Is such an averment equivalent to an averment that the injury occurred without the fault or negligence of the plaintiff? A passenger is bound to use ordinary care and prudence to avoid injury. If a passenger is not guilty of the "want of ordinary care and prudence," then he has exercised ordinary care and prudence. The two expressions mean the same thing, and are used interchangeably by the courts and elementary writers. Thus, when this case was here before, the court said: "Two things must concur to enable the plaintiff, in such a case, to recover, viz., negligence on the part of the defendant and no want of ordinary care on the part of the plaintiff which directly contributed to the injury."

In like manner, Redfield on Railways: "To the liability of a railway company, as passenger carriers, two things are requisite; that the company shall be guilty of some negligence or omission which, mediately or immediately, produced or enhanced the injury, and that the passenger should not have been guilty of any want of ordinary care and prudence, which directly contributed to the injury; since no one can recover for an injury of which his own negligence was in

whole or in part the proximate cause." See *Robinson* v. *Cone*, 22 Vt. 213; *Butterfield* v. *Forrester*, 11 East, 60; *Simpson* v. *Hand*, 6 Whart. 311; *Rathbun* v. *Payne*, 19 Wend. 399; *Barnes* v. *Cole*, 21 Wend. 188.

The averment in the complaint under consideration is in the exact words used by this court in this case when it was here before. In our opinion, the averment is sufficient.

The doctrine laid down by this court, in the case of *The E. & C. R. R. Co.* v. *Dexter, supra*, that the complaint will be sufficient, if " it must clearly appear, from the facts which are alleged, that the injury occurred without fault or negligence on the part of the plaintiff," was approved of and followed by this court, in the case of *The I. & C. R. R. Co.* v. *Paramore*, 31 Ind. 143.

We proceed to inquire whether the facts alleged in said paragraph of the complaint clearly show that the injury occurred without fault or negligence on the part of the decedent. What are the facts stated? They are, that the said defendant failed to deliver said Rebecca safely at Columbus, but, on the contrary, "at and near the usual place of delivering passengers at Columbus, said defendant not having been present, in person, or by their agents or servants, to assist said Rebecca to get from and leave said cars, and said defendants not having stopped the motion of said cars a sufficient length of time to allow said Rebecca to safely and securely leave said cars, but having so far checked the motion thereof that said Rebecca could safely leave the same, and while she was in the act of leaving, suddenly started said train again without allowing said Rebecca a reasonable time to get off; said Rebecca, in attempting to leave said cars, without want of ordinary care on her part, was thrown violently from said train of cars, and the platform of the said depot was so negligently constructed that the foot of the said Rebecca caught in a hole thereof, and she was run over by said cars."

Four separate and distinct charges of negligence are made against the railroad company; first, that the company was not

The Jeffersonville, Madison, and Indianapolis R. R. Co. *v.* Hendricks, Adm'r.

present, in person or by her agents or servants, to assist the deceased from the cars; second, that the train of cars did not stop long enough to enable passengers to safely and securely leave the cars; third, that the train of cars stopped long enough to induce the decedent to believe that she could safely and securely leave the cars, and while she was attempting to do so, the train was suddenly started again, and by means thereof she was violently thrown from the cars; fourth, that the platform of the depot was so negligently constructed that the foot of the decedent was caught in a hole thereof, and while thus held fast, was run over by said train of cars, and was then and there crushed to death.

Do not the facts clearly and conclusively show that the decedent was not in fault? Was not the attempt of the decedent to leave the cars, under the facts stated, "made under such circumstances that a person of ordinary caution and care would not have apprehended danger therefrom?" If it was, then the decedent was without fault or negligence; and in our opinion, the decedent was not guilty of negligence in attempting to leave the train under the circumstances. The train having very nearly come to a full stop, the decedent had the right to suppose that it would stop long enough for her to leave the train; and she also had the right to suppose that some of the agents of the company would be present to aid and assist her in leaving the cars, and if her just expectations had been realized, she could and would have safely left the train.

It is also insisted by the appellant that the demurrer should have been sustained, for the reason that the representative character of the plaintiff is not sufficiently shown. We think otherwise. That question was correctly decided against appellant when this case was here before.

We are of the opinion that the court committed no error in overruling the demurrer to the second paragraph of the complaint.

The point next relied upon for a reversal, and most elaborately presented by appellant's counsel, is in substance as

follows: Said Rebecca was, at the time of her decease, a citizen and resident of Kentucky, and her administrator (appellee) was appointed by the State of Kentucky, and not by this State. This action being based upon a statute of this State, cannot be maintained under these circumstances, for the statute only gives the right to an administrator appointed under the authority of the laws of this State, to bring such a suit, and it can only be maintained for the wrongfully causing the death of a citizen or resident of Indiana at the time the death occurs.

The question just stated is based upon the action of the court in sustaining the demurrer to the second paragraphs of the answers to the first and second paragraphs of the complaint, the substance of which answers has been heretofore stated in this opinion.

The question presented is new and important, and we have given it that thoughtful and mature consideration which its novelty and magnitude demand.

This action is based on the following statute:

"Sec. 784. When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed five thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." 2 G. & H. 330.

The first branch of this proposition presents the question whether section 784, 2 G. & H. 330, applies exclusively to a resident of the State of Indiana whose death is caused by the wrongful act or omission of another, or whether it extends to all cases of death so caused within this State, regardless of the place of residence of the deceased. It would seem as though the language of the act itself was so

The Jeffersonville, Madison, and Indianapolis R. R. Co. *v.* Hendricks, Adm'r.

perfectly clear and explicit that this question could not arise. It provides, that, "when the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission." The last clause of the above quotation contains the only condition which must exist as a pre-requisite to the maintenance of the action which the legislature has seen fit to impose. They have not said that the right shall exist only in cases where the deceased was, at the time of his death, a resident or citizen of Indiana; but, given the fact that the death of one has been caused by the wrongful act or omission of another, they leave for the courts solely the inquiry whether, had the injury not been fatal, the injured party could himself have recovered therefor.

The above section of the code does not limit the remedy provided for causing the wrongful death of another to resident citizens of this State, and we possess no power to thus limit the operation of the section. Nor do we believe that the legislature had an intention to confine the remedy to resident citizens of this State. The second section of article 4 of the constitution of the United States provides, that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

Judge WASHINGTON, in *Corfield* v. *Coryell*, 4 Wash. C. C. 371, held that the above section conferred "the right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of *habeas corpus;* to institute and maintain actions of any kind in the courts of the state," etc.

There can be no doubt that the citizen of any other state has the clear and undoubted right to pass through or reside in this State, and for any injury done to his person, property, or reputation, he may institute and maintain an action in our courts. This right is secured by the federal constitution,

which is the paramount law, and our statute gives to the personal representatives an action in case of death where the person injured could maintain an action when death did not occur. The comity which exists between the American states renders it unreasonable to suppose that our legislature intended to deny to the citizens of the several states the full and equal protection of our laws. If the legislature of this State possessed the power, and should attempt to exercise it, to deny to the citizens of the other states, passing through or residing in this State, the full and just protection of our laws, it would result in retaliation. Under such a system, there would be no security or protection for the persons, lives, or property of American citizens beyond the limits of their respective states. Such a union of states would not be worth preserving.

In our opinion, the section under examination was intended to provide a remedy, not only for the resident citizens of this State, but for the citizens of the several states while passing through or residing within this State.

But it is earnestly insisted by counsel for appellant, that the court erred in sustaining the demurrer to such paragraph of the answer, for the further reason that a foreign administrator cannot maintain an action in our State for wrongfully causing the death of a person. In our opinion, this question was decided adversely to the appellant when this case was formerly in this court, but we will meet and decide it again. The argument is this: that when the act was approved, which gives to a foreign administrator the right to sue in the courts of this State, section 784 of the code, upon which this action is based, had not been approved. The act in reference to the settlement of decedents' estates was approved on the 17th day of June, 1852, while the civil code was not approved until the 18th day of June, 1852.

In our opinion, the point is not well taken. These acts were passed by the first legislature which assembled after the adoption of the present constitution. Upon that legislature was devolved the duty of perfecting a general system

of laws which would be applicable and conformable to the new constitution. The only limitation placed upon the power of a foreign administrator to sue is, that he shall sue "in like manner and under like restrictions as a resident administrator." Can it be doubted that a resident administrator could maintain such an action? The act conferring upon foreign administrators the power to sue does not restrict such right to such actions as were then authorized to be brought. The power conferred, in our opinion, applied not only to such causes of action as then existed, but to such as might afterward be created. If we should hold that a foreign administrator cannot sue, in a case like the one in judgment, because the right of action had not then been created, we should have to hold that a resident administrator could not maintain such an action, for the reason that the foreign administrator may maintain any action that a resident administrator may. Such a ruling would completely defeat any action under section 784 of the code, for that expressly provides that the action shall be brought by the personal representatives of the decedent. It is our duty to · execute, and not to defeat, the plain and undoubted intention of the legislature.

It is also insisted by counsel for appellant, that a foreign administrator cannot maintain such an action, for the reason that section 784 of the code has no extra-territorial operation. But in our opinion the doctrine contended for has no application to the case in judgment, as the action is brought in the state where the right and remedy are given.

But another reason assigned why the court should hold that a foreign administrator cannot maintain this action is, that the act provides that the recovery shall be for the benefit of the widow and children, if any, or next of kin, and inasmuch as by common law the distribution of a decedent's estate is governed by the law of the residence of decedent at the time of his death, therefore the legislature is to be presumed to have intended that the person for whose death

the recovery is had was a resident of Indiana, and the distribution is to be in accordance with our laws.

The evil to be remedied by this legislation was to provide for some pecuniary compensation, to be made by one person for taking the life of another, which before this enactment he could not have been required to make. Now, it was in the power of the legislature to have devolved the right of action for the recovery of this compensation upon whomsoever it pleased; as in case of the death of a child, for causing which, by section 27 of the code, 2 G. & H. 56, the father, etc., may bring suit. It was a mere matter of choice of persons by the legislature as to who should have the right to sue. In this case it chose to devolve the right upon the personal representatives. Having thus conferred the right of action, and directed who should prosecute it, had they stopped here, it would have been inferable, at least, that the fund recovered would have been simple assets of the estate, to be disposed of as other assets. But having created this fund, the legislature had the right to determine what should become of it, and who should be benefited by it; and in the exercise of that right, the fund itself is charged with the express trust that it must inure exclusively to the benefit of the widow and children, if any, first, and if no widow or children, then to the next of kin of deceased. Upon each and every farthing recovered in an action of this kind is ineffaceably impressed a trust of the most high and sacred character.

We will not indulge the presumption that the courts of the State of Kentucky would permit a fund created by a sovereign state, charged in its inception with so sacred a trust, to be squandered or diverted from its legitimate objects. The damages recovered in this action must inure to the exclusive benefit of the children of the deceased. The administrator will hold it in trust for them, and they can doubtless enforce the faithful execution of such trust. But the question which we have to decide is not the proper dis-

tribution of the money recovered, but whether the appellee is entitled to recover any damages.

In our opinion, the court committed no error in sustaining the demurrer to the second paragraph of the answer.

The next error assigned presents for our decision the question whether the court erred in sustaining the demurrer to the third paragraph of the answer, setting up as a defence to the second paragraph of the complaint, that the cause of action therein set forth had not accrued within two years. What we have already said in reference to the legal effect of the amendment to the second paragraph of the complaint, virtually disposes of this assignment of error. If we are right in the conclusion reached, that there was no new cause of action stated in the amended complaint, it necessarily and unavoidably results that the original cause of action was not barred; and as the statute of limitations was only pleaded to the new cause of action, and not to the old one, the court committed no error in sustaining the demurrer to such answer.

The same defence was pleaded to the supplemental complaint making the consolidated company a defendant. What we have hereinbefore said, in reference to the legal consequences of the consolidation of said companies, very clearly shows that the consolidated corporation could make no defence which The Jeffersonville Railroad Company could not have made.

We now proceed to inquire whether the court erred in overruling the motion for a new trial.

In the first place, it is insisted that the court erred in giving and refusing to give certain instructions. We have carefully examined the instructions given and those asked by appellant and refused by the court, and are entirely satisfied that the court committed no error in giving or refusing to give instructions. We do not believe that any useful purpose would be accomplished by setting out in this opinion the instructions given or refused, except the twelfth instruction given, which reads as follows: "While, as matter of law, it

may be necessary to insert the names of the decedent's children in a complaint for damages prosecuted for their benefit, the death of one or more of her said children occurring after suit is brought, although such deceased children may have left children of their own, does not abate the suit, even if such death be not stated in the complaint, or the names of their children be given. The administrator is the party plaintiff, and the ·necessity for alleging the names of the children arises out of the law which authorizes the maintenance of this class of actions only in case there are next of kin who may have sustained injury. It will be sufficient to justify your finding for plaintiff, so far as any question concerning her next of kin is concerned, if you find that she actually left surviving her children."

The defendant below asked instructions on this ·point as follows:

1st. The proof as to the names of the husbands and next of kin must correspond with the names given in the complaint.

2d. If any of decedent's daughters were married, their names by marriage should have been given in the complaint.

3d. And the names of their husbands should also be set forth in the complaint.

4th. If any of the daughters were married, and have died since the commencement of the action, leaving children, the names of the children should have been made to appear in the complaint by supplemental complaint, or otherwise, and not so appearing, the jury must find for the defendant.

The instructions so asked were refused, and exceptions taken.

In our opinion, the instructions asked by the appellant were correctly refused, and the one givén by the court was as favorable to the appellant as the law will justify.

The law upon this subject is stated as follows by this court, in *The I., P., & C. R. R. Co.* v. *Keeley's Adm'r*, 23 Ind. 133: "The right to sue is given to the personal representative of the deceased, and the action is prosecuted in his name; but

The Jeffersonville, Madison, and Indianapolis R. R. Co. *v*. Hendricks, Adm'r.

the damages 'must inure to the exclusive benefit of the widow and children, or next of kin,' and therefore the action is, in effect, prosecuted for their benefit. If there were no wife, children, or next of kin surviving the deceased, capable of taking under the statute, the action would not lie. It is therefore clear that the complaint must at least aver that there are such persons to whom, under the statute, the damages inure. It is an issuable fact that may be controverted, and must be alleged in the complaint; and, if denied, must be proved to sustain the action." The court, in a subsequent part of the opinion, said that the better practice would be to state the names of such persons in the complaint, but we are of the opinion that it will be sufficient to allege in the complaint, and prove on the trial, that there are persons who are entitled, under the statute, to the damages. We hold that it is not necessary to give the names of such persons in the complaint, but such allegation would not vitiate. The husbands of the married daughters of the deceased are not entitled to the money, and, therefore, need not be named. The children of the deceased daughters would inherit their shares.

It is next claimed that the damages assessed were excessive. We do not think so. The question of damages was fairly submitted to the jury, and we see no reason for disturbing their finding.

It is finally claimed by appellant that the verdict is not sustained by sufficient evidence. We think otherwise. How it would be possible more clearly to show the facts necessary to justify, and even demand, a verdict such as was rendered in this case, we cannot discover. The mangled corpse, admitted to be that of Mrs. Hendricks, showed the death. The depositions of her daughters and others as to the time she left her home in Lexington show it to have been impossible for her to have reached Columbus on any other than the night train up of the night she was killed. The hole in the platform of the depot, forming the trap in which her foot was caught, is conclusively proven, and her foot was

still there fast when one of the coroner's jury found her the next morning. The hole was at the outer edge of the platform, tapering from the edge inwardly, of such shape and size that it would have been impossible for her to have inserted her foot into it, as it was, without having stepped from the car on to the platform. There was no light on the platform or in the depot. Although she was old and fleshy, and must have been, to some extent, helpless, neither conductor, brakeman, nor other employee of the company appeared, to render her any assistance in finding her way off from the train, through the darkness, on to a secure part of the platform, but, after midnight, she was left to grope her way over a broken platform of a depot, with which she was unacquainted, by the help only of the dim light of the stars; and, to add to her embarrassments, no sooner had the train stopped, or come to a very slow motion, than it almost instantaneously started again.

It seems to us that this evidence inevitably leads to the conclusion arrived at by the jury in their answer to the third special interrogatory propounded to them by the appellants, viz.: "when she stepped from the car, it being dark, she stepped in the hole on the platform at the place of delivery, and was caught by the car or cars, and fell, was drawn or thrown under and run over by the same;" as well as the conclusion stated in answer to the fifth interrogatory, whereby, having answered the fourth, that her death was caused by the negligence of the railroad company, they proceed to explain how, as follows: "failure in the conductor's being present to assist her to safely land, and negligence on the part of the defendant to have the place of delivery in proper order, and want of proper light at the same."

The evidence very clearly shows that the agents and employees of the appellant were guilty of gross negligence, and we have been unable to find any fact or circumstance which mitigated their conduct. The verdict of the jury and their answer to the interrogatories were fully sustained by the evidence.

The judgment is affirmed, with costs, and with five per cent. damages.*

Osborn, J., dissents from so much of the above opinion as holds that the suit was properly brought by the foreign administrator.

*S. Stansifer,* for appellant.

*R. Hill* and *G. W. Richardson,* for appellee.

*Petition for a rehearing overruled.