# THE OHIO AND MISSISSIPPI RAILWAY COMPANY

*v.*

## CHARLES T. STRATTON.

1. NEGLIGENCE—*injury to child when person in charge of child is negligent.* The negligence of a parent or guardian having in charge a child of tender years will not excuse a carrier by rail from using all the means in its power to prevent injury to the child; yet if the negligence of the former is the proximate cause of the injury to the child, by unnecessarily and imprudently exposing it to danger, the carrier can not be held responsible, unless it is shown to have omitted duties, the discharge of which would have averted the injury.

2. SAME—*passenger getting off train while in motion.* A passenger has no right to attempt to get off a train of cars when in motion, and if he undertakes to do so without the knowledge or direction of any employee of the company, it is at his peril, and he must bear the consequences, however disastrous.

3. Thus, where a father took passage, with his son, aged about ten years, upon a train of cars, being assured that the train would stop at a certain station, and when the whistle was sounded for such station, he and his son went out of the coach upon the platform, and stepped down on the steps, and, being burdened with luggage, stepped off the train before it had stopped, and the son was thrown upon the station platform, and from there fell under the wheels of the cars, where he received such an injury as to cause the loss of both legs, it was *held*, that no recovery could be had against the company.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

This was an action on the case, by the appellee, against the appellant, to recover damages for personal injuries alleged to have been caused by negligence on the part of the defendant. The opinion of the court gives a statement of the facts. The jury returned a verdict in favor of the plaintiff for $6000, upon which the court rendered judgment, overruling a motion by the defendant for a new trial.

Mr. H. P. BUXTON, for the appellant.

Mr. B. B. SMITH, and Messrs. CREWS & HAYNES, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

When plaintiff was injured, he was but ten years old. That was in 1863. He had just arrived from St. Louis. His father, in whose care he was while in the city, desired to leave for Salem by the evening express train on defendant's road. That train, it was known, did not usually stop at Salem, but on inquiry of the division superintendent, it was ascertained it would stop that night. Accordingly, he procured passage for himself and son. On their arrival at Salem, in attempting to leave the cars, plaintiff was in some way thrown or fell under the moving cars, and had both legs so badly crushed they had to be amputated. Soon after reaching his majority, plaintiff commenced this action to recover damages for the injuries sustained.

In the first count of the declaration, it is averred, as a ground of liability, that, plaintiff being a passenger from East St. Louis to Salem, defendant did not at the latter station slacken the speed of its train and stop a reasonable length of time to enable plaintiff to get off the cars without injury to his person; that defendant did not use due care in that regard, but, on arrival at Salem, slackened the speed of the train, thereby inviting plaintiff to leave the cars, and that, with the consent and persuasion of defendant, plaintiff did alight from the cars, but, by means of the rapid rate at which the train was moving, he was thrown violently upon the platform, and thence underneath the moving cars; and in the second count it is averred defendant did not at Salem stop its train a reasonable length of time to allow plaintiff to leave it with safety, but negligently and carelessly suddenly started the train in motion, whereby plaintiff was violently thrown underneath the moving cars, and was injured.

It is not claimed any recovery can be had on the first

count. The proof shows, and it is not now disputed, the train was stopped a reasonable time to permit all persons to get off with entire safety. A number of passengers, among them women and children, did get off at that station, ample opportunity being allowed for that purpose. There can be no pretense that branch of the case has been sustained by any testimony offered. The contest is as to the cause of action attempted to be set up in the second count, viz: whether defendant, although it may have stopped its train, suddenly started it up again with such violence, while plaintiff was in the act of getting off, as to throw him upon the platform, and from thence under the cars.

The jury found the issues for plaintiff, and the principal question is, whether the verdict can be maintained on the testimony.

It will not be necessary to remark on all the instructions given on behalf of plaintiff, further than to say many of them are faulty in the statements of legal principles applicable to the case. The case is by far too serious in its character, and too sad in its consequences, to be decided on any mere technical objections to instructions. We prefer to place our decision on the merits of the case alone. The injury plaintiff has sustained is irreparable, and, if a recovery can be had at all, the present judgment ought to be affirmed. No measure of damages can make full reparation. These considerations have induced a most careful and painstaking investigation of the case in all its phases. We have examined the record with that degree of care the importance of the case demands, and, however much we may be touched by the inexpressibly sad misfortune of plaintiff, we have been unable to discover, even under the most favorable view of the evidence, any tenable ground upon which to place an affirmance of the judgment in his favor.

Plaintiff was too young to exercise any great degree of care for his personal safety. He was largely controlled in his actions by his father, in whose care he had been traveling.

The arrangement for leaving St. Louis on the evening express train, that did not usually stop at Salem, was made by his father. Plaintiff had nothing to do with the selection of the train he was to go on. An accommodation was to leave on the same evening, but at a later hour, which it was known would stop at all the stations, for the convenience of passengers; but his father chose for them the express train, and plaintiff had no choice in the matter.

Conceding it to be a correct principle, the negligence of the parent or other guardian having in charge a child of tender years would not excuse the carrier from using all the means in its power to prevent the injury, still if the negligence of the former was the proximate cause of injury to the child, by unnecessarily and imprudently exposing it to danger, the carrier upon no just principle can be held responsible. It is not the negligence of defendant, but of the party having the control of the child, and if any liability attaches to either party, it must be to the latter. Nevertheless, it is the duty of defendant to make it appear it was by no omission of duty on its part the accident occurred, and that the timely discharge of all duties imposed by law, and the provident care for the safety of passengers, would not have averted the danger. This brings us to consider whether defendant in the case at bar has been guilty of any negligence that tended to produce the injury to plaintiff, even under the strictest rule of liability the law imposes.

There is but little conflict in the evidence as to the principal facts—not more than often occurs in the accounts given by different persons of any casualty witnessed by them. Both parties agree plaintiff's father was assured by Mr. Hinckly, the division superintendent, the express train would stop at Salem that night, and that this assurance was given before he engaged passage for himself and son. At Odin, a number of passengers were taken on for Salem, under a like assurance from the superintendent the train would stop at that station. This latter fact must have been known to plaintiff's father, as

the superintendent was in the same coach with him, and it seems hardly possible he did not hear the inquiries on that subject.   It was about dark, or perhaps a little after, when the train reached Salem.   As the train was being checked up, passengers for that station began to prepare to leave the cars, when Hinckly, in a voice loud enough to be heard, and was heard by many, said to them, " Don't get off till the cars stop!"   Plaintiff and his father both deny they heard this announcement.

In his testimony, plaintiff's father gives this account of the accident that befell his son:   When the whistle sounded for Salem station, he and his son went out upon the platform of the car.   As the train approached the station, they went down on the steps of the car, to be ready to step off as soon as the train should stop.   Plaintiff was on the lower step, and witness on the one next above, holding plaintiff by the hand.   Both of them carried some luggage.   Witness remembers saying to his son, not to get off until the train stopped.   When the car came to the platform of the station, plaintiff was about to leave the car, and the witness adds, as to the cause of the accident, the train seemed to stop just as his son stepped off, and then suddenly started forward again, by a violent movement, which threw him upon the platform, and his son under the wheels of the cars.   Substantially the same account of the immediate cause of the accident is given by plaintiff.   No doubt they believed, and do yet believe, the train had come to a halt when plaintiff stepped from the cars, but in this they must have misjudged, being misled, in all probability, by the darkness of the hour.   The violence of the accident corroborates this theory of the case.   Witness says he was thrown a complete somersault upon the platform of the station at the same time his son was thrown under the wheels of the cars.   This result could not have been produced unless the train had been in rapid motion. Manifestly, they were mistaken as to its speed, or else they would never have taken the fatal step.   Other passengers who got off at that station all unite in saying the train was stopped

in the usual way, and they noticed no unusual motion. No one of all the witnesses sworn, except plaintiff and his father, observed the fact testified to by them, that the train was first stopped, and then suddenly started with great violence. The witness Andrews says that he, and his mother, then 58 years old, were standing up in the car, waiting for the train to stop, but experienced no sudden jerk or shock. A woman, with an infant in her arms, was also standing up in the car, but observed no unusual or violent motion. All other passengers for Salem got off, when the train stopped, without difficulty, plenty of time being given for that purpose. No reason is shown, in all this evidence, why plaintiff and his father could not have done the same thing, had they observed due care for their personal safety.

By their voluntary choice they selected a most dangerous place, on the steps of the car, while the train was yet in motion. Both were incumbered with baggage, which would effectually prevent them from holding on to anything to secure their safety. The position occupied was dangerous, and was taken without due care. Whether the accident was produced by any sudden, violent movement of the cars, caused by putting on or letting off brakes in the ordinary management of the train, or whether they were induced to step off, under the belief the train had come to a halt, when it had not, it must be attributed to their own omission to observe the usual precautions, rather than to any negligence on the part of defendant. It may have been the impression of plaintiff's father, the train would stop at that station but a short time, and that it would be necessary to get off very quick. But this belief, however induced, could not justify him in exposing himself and son to such great hazards. He had been assured by officers in charge of the train, it would stop to let off passengers, and he ought to have relied on that assurance. Had he remained in his seat, he could have heard the announcement, which was distinctly heard by others: "Don't get off till the cars stop!" which would have put him on his guard.

Defendant had undertaken to stop its train at Salem, to let passengers get off, and any violation of that agreement would have subjected it to damages. A passenger has no right to attempt to get off a train when in motion, and if he undertakes to do so without the knowledge or direction of any employee of the company, it is at his peril, and he must bear the consequences, however disastrous. *Illinois Central Railroad Company* v. *Slatton*, 54 Ill. 133 ; *Chicago and Alton Railroad Company* v. *Randolph*, 53 Ill. 510.

The verdict, in our opinion, is against both the law and the evidence, and the judgment must be reversed.

*Judgment reversed.*