Adams' Adm'r v. L. & N. R. R. Co.

CASE 96—NEGLIGENCE, SPECIAL VERDICTS—MARCH 12, 1885.

# Adams' Adm'r v. L. & N. R. R. Co.

APPEAL FROM HARDIN CIRCUIT COURT.

Although the jury found a general verdict for appellant, yet their special findings were such as that the court rendered judgment for appellee upon the ground of contributory negligence.

1. *Held*—That it is the province of the court to pronounce the law, and the jury to pass upon issues of fact, and if the verdict of the jury upon the special issues in the case be inconsistent with their general verdict, the court will and should give judgment according to the special finding.

2. The answers of the jury to the numerous questions put to them by both parties was entirely inconsistent with their general verdict, and it was the duty of the court to render judgment for appellee.

3. When a witness has been examined in chief, it is in the discretion of the court whether a re-examination shall be had, if the court be satisfied that the witness has testified as to his full knowledge.

J. P. HOBSON FOR APPELLANT.

1. The course adopted in this case of examining and cross-examining the jury as to all matters of evidence was unknown to the ancient mode of trial by jury.

2. The authority for a special verdict is an innovation upon the common law, and the practice pursued of examining and cross-examining the jury is unwarranted by the ancient mode of trial by jury, which is made sacred by the Constitution. (Dice v. Willamette, &c., Co., 8 Oregon; True's Case, 21 Am. R. R. Reps., 371; R. R. Co. v. Boring, 51 Ga., 582; Bennett v. L. & N. R. R. Co., 102 U. S.; Hayward v. Miller, 94 Ill., 349; 23 Am. Rep., 233, note; Stewart v. R. R. Co., 53 Texas, 289; Tobin v. R. R. Co., 59 Me., 183, and note; 8 Am. Rep., 415; 16 Am. Rep., 618; Hartwig v. R. R. Co., 49 Wis., 358; Law v. R. R. Co., 72 Me., 313; Huffman v. R. R. Co., 75 N. Y., 605; Holbert v. R. R. Co., 40 N. Y., 145; Van Horn v. R. R. Co., 38 N. J., 133; Borden v. Same. 121 Mass., 426; note to Ingalls v. Bills, 43 Am. Dec., 365; L. & N. R. R. Co. v. Wolf, 80 Ky., 82; R. R. Co. v. Green, 81 Ill., 19; P. & E. R. R Co. v. Letcher, 2 Ky. Rep. and J., 153; Berry v. Pusey, 80 Ky. Rep., 166; Ky. Constitution, article 13, section 8; Stephens' Pleading, side pages 91–2; 3 Blackstone, 375; 2 Tidd's Practice, 928; 31 Me., 325; 3 Dallas. 1; Slitinius v. U. S., 5 Cr. C C., 573; Wilkinson v. Gurly, 1 Curt 69; U. S. v. Wilson, Bald., 69;. Cooley Const. Lim., side page 410, last edition.)

WM. LINDSAY FOR APPELLEE.

1. It is discretionary with the court to order a special verdict without the request of either party, and probably against the objections of both; but when, as in this case, one party moves for a special verdict, then the court shall direct to find it, and no general or separate verdict shall be returned It follows that the sixth and seventh grounds for a new trial by appellant were badly taken. (Civil Code, sections 326, 327.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the case of Witty against the railroad company, reported in volume 6, Law Reporter, it was held that when the jury is directed to find a special verdict the court may, but is not compelled, to direct them to find a general verdict, and it was further held that the failure to instruct the jury as to what was ordinary and what willful or gross neglect, was not error, because when the facts were found by the jury it was a question of law for the court (subsection 5 of section 317); that where a special verdict is required, the questions of law may be reserved by the court until after verdict. So in this case there was no error committed in refusing the instructions applicable to a general verdict, or in refusing to require such a verdict to be rendered.

The principal objection to the proceedings in this case arises from the number of questions or interrogatories propounded to the jury by both parties. The answers to special interrogatories was designed to lead to the finding of certain prominent facts that must determine the law of the case either for the plaintiff or the defendant. There has been a departure in this case from this rule on both sides, the plaintiff propounding some sixteen interrogatories, and the

defendant about twice that number. Twelve men were sworn as jurors, and after hearing the testimony were required to give in substance the statement of each witness. They were examined and cross-examined as to the entire testimony, and the mode of interrogation could not have extended further, if the jury as a body had been required to depose on oath as to the substance of all the testimony given. Such a practice not only encumbers the record, but confuses the minds of both the court and jury, and leaves all parties at sea as to the issue of fact to be tried. There was only one issue in this case, and that was: Did the intestate lose his life by the willful negligence of the company or its employes; if so, in what did that negligence consist? It is the controlling fact or facts that should be ascertained by the special findings, and not the testimony establishing these facts.

It may have been a dark night, and the intestate may have eaten his supper at Louisville before the train left, and while such questions were proper to ask a witness, they were not such facts as should have been made the subject of a special finding. Both parties, however, having seen proper to interrogate the jury in that manner, the response of the jury to the questions propounded by the defendant may be disregarded, and still the response to the plaintiff's interrogatories shows that no recovery could be had.

The intestate had left Louisville for his home, at or near Elizabethtown, about 10 o'clock at night, on a long train of passenger-cars that was carrying those who had attended some celebration, at Louisville, back to their homes. The ordinary train was not sufficient to hold

them, and passenger-cars were attached to a sleeper, that seems to have occupied about the middle of the train. The intestate was in a car behind the sleeper and next to it. When reaching the depot at Colesburg, it is alleged that the train having stopped at the depot, and that fact being announced, the car in which the intestate was seated, by reason of the length of the train, stood over a small creek, and the intestate getting out of the train to go forward for the purpose of getting something to eat, fell through the trestle on stones in the bed of the creek, and was so badly injured that he died the next day. It was a very dark night, and the intestate was no doubt in ignorance of the danger when he left the car. Two young men on the car with him followed him out, but did not see him fall, although one of them fell shortly after the intestate did, but received no injury.

The jury said, by their special finding for the plaintiff :

First, that when the train stopped at Colesburg the employes called out the station. They further said, that where the intestate got off it was not a safe place to land passengers.

In answer to a question as to whether, after getting off the car, the intestate fell from the bridge or trestle, the jury responded that they believed the train was *slowing* up when he got off. They further said that the intestate failed to use ordinary care, and that the employes of the company, or the company, was guilty of a want of ordinary care in having the sleeper between the ordinary passenger-cars. When asked if the plaintiff ought to recover, what amount should she

recover, they responded by saying : "We believe the plaintiff should recover $1,250."

The special finding by the jury was to the effect that the train was moving to the depot slowly at the time the intestate got off the train, and that the latter was himself in fault, while the only neglect on the part of the company consisted in its having a sleeper midway between the ordinary passenger-cars. On such special findings the court must necessarily have rendered a judgment for the defendant. The evidence on the part of the plaintiff also conduced to sustain this view of the case.

The witness Chelf, who left the car at the time of the accident, following the deceased, was submitted to an examination in chief as well as to a rigid cross-examination, and his testimony tended to show that the car must have been moving when the intestate, who preceded him, got off. The counsel for the plaintiff, after the cross-examination had ended, desired to examine this witness with reference to the same matter, and to explain his statements made on the cross-examination. The court refused this privilege upon the ground, no doubt, that as to time, place and other circumstances connected with the occurrence, the witness had made full and complete statements. The witness was before the court, and from his statements, conduct, etc., the court may have been satisfied that he had disclosed to the jury fully all he knew in regard to the death of the intestate. We can not say that it was an abuse of discretion, and particularly when looking to the affidavit of Chelf, filed on the motion for a new trial. In this affidavit the witness states that he saw

intestate after he got off the car, and he knows the car stopped or *about stopped when Adams got off*.

This still leaves the matter in doubt, and particularly when Chelf walked along safely to the front of the train, and Adams ·fell through the trestle. The evidence of the defense conduces also to show this same state of case. While it is not necessary to determine the liability of the company in failing to have a secure and safe place of egress from any of its cars whenever it may stop at a depot, we are satisfied from the proof that the cars were in motion when the appellant's intestate attempted to leave them, and that his sad misfortune resulted from his own neglect.

It is proven that the name of the station was called ·out, and this is always or usually done before reaching the depot, and those on the rear of the train, in their anxiety to leave for something to eat, undertook to get off before the train stopped. The jury has so said, and the verdict is sustained by the testimony. So without looking to the special verdicts returned for the defendant, the law of the case is against the plaintiff upon the findings to her own interrogatories.

It is claimed that these special findings are in violation of the ancient mode of trial by jury. This question is made for the first time, and after repeated adjudications by this court in reference to special verdicts. It is the province of the court to pronounce the law, and the jury to pass on the issue of fact, and whether the law is given before or after the finding of the facts by the jury is immaterial.

When the evidence offered is not of the character that will support the plaintiff's claim or the issue

made, a demurrer to the verdict was the practice at common law, and this applied where no special finding was authorized; but Mr. Stephens says: "A more common, because more convenient, course than this to determine the legal effect of the evidence is to obtain from the jury a special verdict, instead of finding the negative or affirmative of the issue as in a general verdict. The jury at common law ascertained all the facts disclosed by the evidence, and then left the court to say whether the law authorized a verdict for or against the plaintiff." (Stephens on Pleading, page 123.) The jury gave their opinion as to the existence or non-existence of the fact or facts involved in the issue, and then a verdict was entered, says Mr. Stephens, without their interference.

While the jury has said that the plaintiff ought to recover $1,250, it is certain that the response was obtained by the character of interrogatory propounded by the plaintiff. If the plaintiff ought to recover, what amount or sum is she entitled to? There could have been no mistake as to the finding, and if there was the court ought not to have ascertained it from the juror. The special interrogatories were all answered, and in such a manner as determined the case for the defendant. The court properly overruled the motion for a new trial, nothing occurring during the progress of the trial or after that entitled the plaintiff to be again heard.

Judgment affirmed.