The Toledo, St. Louis and Kansas City Railroad Co. v. Wingate.

No. 16,694.

# The Toledo, St. Louis and Kansas City Railroad Co. v. Wingate.

RAILROAD.—*Passenger.— Injury while Alighting from Train.—Contributory Negligence.*—A woman is guilty of such contributory negligence as will prevent a recovery, in attempting to alight unaided with heavy bundles in her arms from a train, the step of which is more than two feet above the platform while the train is in motion and increasing its speed, although she does so from fear that she will be carried beyond her station. (See note at end of opinion.)

SAME.—*Negligent Construction of Station Platform.—Passenger.— Injury while Alighting.*—For a railway company to construct a station platform twenty-six inches below the level of the lower steps of the cars, so as to compel passengers to jump that distance when alighting, is such negligence as will render it liable for injuries sustained by a passenger who is thrown from the car to the platform upon the sudden starting of the train while she is attempting to get off, and who is free from contributory negligence, especially where it fails to give her sufficient time to alight.

SAME.—*Passenger Injured while Alighting.—Contributory Negligence.*—A railway passenger who, upon going with heavy bundles upon a car platform to alight at her station, and seeing that the car has started without giving her time to get off, goes down the steps and jumps off onto the station platform, and is injured, is guilty of such contributory negligence as will prevent a recovery, although her action is caused by fear that she will be carried beyond her station, it being her duty to remain on the car, and, if damaged by being carried beyond, to sue the company therefor.

From the Parke Circuit Court.

*Bayless & Guenther* and *C. Brown*, for appellant.

*W. T. Brush*, *E. C. Snyder* and *C. M. McCabe*, for appellee.

HOWARD, C. J.—This was an action brought by appellee, a passenger on appellant's train, to recover damages for personal injuries alleged to have been

received by her on alighting from the train at one of appellant's regular stations.

The complaint was in three paragraphs; the third paragraph, however, was withdrawn at the close of the evidence and before the verdict.

A demurrer was overruled to each paragraph of the complaint, after which a general denial was filed and the cause was submitted to a jury, who gave a verdict to the appellee in the sum of eight thousand dollars, also answering certain interrogatories.

The sufficiency of the complaint, under the ruling of the court on the demurrer, is first considered.

From the first paragraph of the complaint it appears, amongst other things, that the town of Wingate is a regular station on appellant's road, where passengers are received and discharged; that the board platform at said station is so negligently constructed that passengers cannot get off the cars without great danger, for .the reason that it is twenty-six inches from the lower steps of the cars down to the platform; that children and lady passengers, on alighting, are compelled to jump down with both feet, to their great hazard, and which they cannot do without almost certain injury when the cars are in motion, unless they are assisted; that in consequence of such careless manner of constructing said platform, and on account of other negligent. acts and omissions of appellant, to be hereinafter stated, appellee was, without any fault on her part, sorely maimed and injured on the 5th day of May, 1891.

The complaint then continues: That on said 5th day of May, 1891, the plaintiff (appellee) "was a passenger on defendant's train of cars, from the city of Frankfort, Indiana, riding thereon upon a ticket purchased of defendant, entitling her to be so carried between said stations and to be safely delivered at said Wingate; that she

entered the defendant's car at Frankfort, carrying with her a goodly sized package, consisting of two pieces of carpet, rolled separately, but lashed and tied together in one bundle, and some other small packages in her possession in said car, was accepted as a passenger thereon by the conductor in charge of said train; that shortly after said train left the station of Frankfort, the conductor in charge thereof passed through the car in which plaintiff was riding as aforesaid, and took up her said ticket, and was then and there and thereby informed that her destination was Wingate, and that she desired and intended to get off said train at said station, and that said conductor then and there saw plaintiff's said packages and bundles and knew that she would need assistance in disembarking therewith from said train at said station; that defendant carelessly and negligently failed to stop said train at said station of Wingate a sufficient and reasonable length of time to permit plaintiff to alight therefrom in safety, and that the conductor and other servants of defendant carelessly and negligently failed to assist plaintiff in alighting therefrom with her said bundles and packages, and whereby and on account of which carelessness and negligence, and without fault or negligence on her part, plaintiff was injured as hereinafter fully alleged; that when said train was within about one-fourth of a mile from said station Wingate, the whistle of the locomotive drawing the same was sounded and the brakeman on said train opened the door of the car in which plaintiff was riding as aforesaid and announced "Wingate," thereby informing plaintiff that the train was nearing her destination; that immediately after the sounding of the whistle and the announcement of the station as aforesaid, said train was run on the side track on the south side of defend-

ant's main track and immediately east of the station of Wingate, and stopped for the purpose of letting the east bound passenger train pass on said road; that the place where said train stopped on the side track, as aforesaid, was not the place for passengers to disembark therefrom, and plaintiff, knowing said fact and for that reason, made no effort to get off at said place, but remained in her seat, in said car, waiting for the train to pull up on the main track, to the usual and proper place for passengers to alight at said station; that as soon as the said east bound train passed, the train upon which plaintiff was riding, as aforesaid, immediately backed on to the main track, and thence proceeded westward, at a moderate rate of speed, toward the usual, customary and proper stopping place at said station, Wingate; That no other or further announcement of the station was made than as hereinbefore alleged, but plaintiff, knowing the train was nearing the proper place for her to get off, made ready to do so without delay, by putting her bundles and packages together for a quick and easy handling, arranging her wraps, etc.; that the train made a momentary stop at, or near, the proper and usual place for passengers to alight therefrom, and that as it "slowed up" and stopped momentarily, as aforesaid, plaintiff arose quickly from her seat in the car, gathered up her bundles and packages in her arms, and without delay proceeded in a brisk walk unassisted by the conductor, or other train men, toward the front or forward end of the car, the proper door for passengers to make their exit therefrom; that, upon reaching and opening said door of the car, she found that the car was in gentle motion, but supposing that the train was merely pulling up to take on or unload baggage, and believing and expecting, as well she might, that the conductor, or other servant of defendant would meet

and assist her down the steps and to alight in safety, she proceeded cautiously and carefully, though rapidly, out onto the platform of the car, and then finding that the car was still moving and more rapidly, and not seeing any one to assist her, she was stricken with dismay and fright and seized with fear that she would be carried past her station and away from home, and feeling that she must get off, and yet believing and expecting that the conductor or other train men would meet her, take her bundles and packages and aid her in alighting, as was their duty and custom with female passengers, she proceeded down the steps of the car toward the station platform; that no servant of defendant was there to assist her or save her from falling, but they carelessly and negligently failed and refused to do so; that at or about the time she reached the lower step of the car, the speed of the train and car, on the step of which she was stepping, was carelessly, negligently, and suddenly quickened and accelerated by defendant, whereby the plaintiff, without any fault, carelessness, or negligence on her part, but wholly through the carelessness and negligence of the defendant and its servants by failing to stop said train at said station a sufficient and reasonable length of time to permit her to alight in safety by the negligent failure of the employes thereof to assist in alighting, and the careless and negligent starting and jerking of the car, and the negligent, careless, and faulty planning and constructing of the platform, all as aforesaid, was severely wrenched and strained, and was thrown violently down from the car step to the platform, a distance of more than two feet below, striking first upon the back of her head, neck, and shoulders upon the hard and solid timbers and planks of the platform, whereby she was greatly

bruised and wounded and severely and dangerously shocked and crippled."

The second paragraph of the complaint is similar to the first, except that it is alleged, in substance, that the train did not come to a full stop at the station, but only "slowed up," or "slacked the speed."

It seems very clear, from the allegations of the complaint, that in the manner of constructing its platform, and also in the manner of running its train on this occasion, the appellant company was guilty of culpable negligence.

The slightest consideration for the convenience and safety of its passengers would have suggested to appellant that the platform ought not to be laid twenty-six inches below the level of the lower steps of the cars, thus compelling the alighting passengers, even women and children, to leap from the steps like chickens from their perches.

As to the running of the train, it is alleged that as it approached the station the name of the place was called out by the brakeman. At the station the train either stopped for a moment, or merely slacked its motion, not giving appellee time to leave the car before it started on again. The passenger was a lady, loaded with heavy bundles, and it had been the custom at this station to aid lady passengers to alight, as plainly appears from the allegations. The conductor saw her and her bundles, took up her ticket, and knew that she was to stop at Wingate; but no aid or assistance was given her, nor was she able to get from her seat to the car door before the train was again in motion, if indeed it came to a stop at all. The appellant was clearly negligent in thus failing to give appellee sufficient time to alight in safety from the train.

In *Terre Haute, etc., R. R. Co.* v. *Buck, Admx.,*

96 Ind. 346, the following from *Pennsylvania R. R. Co.* v. *White*, 88 Pa. St. 327, is cited with approval: "It is the duty of the company to provide.for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so. *Railroad Co.* v. *Aspell*, 11 Harris 147."

In *Jeffersonville R. R. Co.* v. *Hendricks, Admr.*, 26 Ind. 228, the court said: "It was, most unquestionably, the duty of the conductor, or those in charge of the train, to stop at the station a sufficient time to enable the deceased to get safely off, and if from any cause it was necessary that she should have aid in getting from the train, it should have been furnished by the defendant." See also *Jeffersonville, etc., R. R. Co,* v. *Parmalee, Admr.*, 51 Ind. 42.

That it is the duty of a railway carrier of passengers to provide for the safe entry and exit of its patrons from its cars, including the proper care of its depots, platforms and approaches, see further: *New York, etc., R. W. Co.* v. *Doane*, 115 Ind. 435; *Louisville, etc., R. W. Co.* v. *Lucas*, 119 Ind. 583 (6 L. R. A. 193); *Lucas* v. *Pennsylvania Co.*, 120 Ind. 205; *Pennsylvania Co. v. Marion*, 123 Ind. 415 (7 L. R. A. 687); *Ohio, etc., R. W. Co.* v. *Stansberry*, 132 Ind. 533.

The negligence of the appellant is therefore evident. It remains to see whether the complaint shows any contributory negligence on the part of the appellee.

The complaint alleges that the appellee was injured "without fault or negligence on her part."

It has been repeatedly decided that, in a complaint for personal injuries, the general allegation that the plaintiff was without fault is sufficient to negative contributory negligence; and that the complaint will be good in this

respect if there are no further and specific allegations, inconsistent with the general allegation of due care. If, however, after the statement that the plaintiff was free from fault or negligence, the complaint goes on to give particular acts showing that, as a matter of fact, the plaintiff was not free from negligence, such particulars will be held to control the general statement. The allegation that the plaintiff was without fault, standing by itself, would be sufficient; yet such general allegation is in reality but a conclusion, and will be overcome by the allegation of particular facts inconsistent therewith. When the particular facts are given, the court is itself able to draw the proper conclusion, and to say whether the conclusion of the pleader was warranted. *Ivens* v. *Cincinnati, etc., R. W. Co.,*103 Ind. 27.

The particulars of appellee's acts in relation to her injury, as stated in the complaint, are that appellee, "knowing the train was nearing the proper place for her to get off, made ready to do so without delay, by putting her bundles and packages together for a quick and easy handling, arranging her wraps, etc.; that the train made a momentary stop at, or near, the proper and usual place for passengers to alight therefrom; and that as it 'slowed up' and stopped momentarily, as aforesaid, plaintiff arose quickly from her seat in the car, gathered up her bundles and packages in her arms, and, without delay, proceeded in a brisk walk, unassisted by the conductor or other trainmen, toward the front or forward end of the car, the proper door for passengers to make their exit therefrom."

So far, it is obvious that the appellee was in the exercise of all due care; and if she had been hurt on reaching the door by a sudden starting of the train, the company would have been liable. Such was the case of *Ohio, etc., R. W. Co.* v. *Smith,* 5 Ind. App. 560; and

also that of *Chicago, etc., R. R. Co.* v. *Arnol,* 144 Ill. 261 (19 L. R. A. 313).

But, in the case at bar, the complaint continues: "That upon reaching and opening said door of the car, she found that the car was in gentle motion, but supposing that the train was merely pulling up to take on, or unload, baggage, and believing and expecting, as well she might, that the conductor or other servant of defendant would meet and assist her down the steps and to alight in safety, she proceeded cautiously and carefully, though rapidly, out onto the platform of the car; and then, finding that the car was still moving and more rapidly, and not seeing anyone to assist her, she was stricken with dismay and fright, and seized with fear that she would be carried past her station and away from home, and feeling that she must get off, and yet believing and expecting that the conductor or other trainmen would meet her, take her bundles and packages, and aid her in alighting, as was their duty and custom with female passengers, she proceeded down the steps of the car toward the station platform."

It requires no argument to show that this statement discloses inexcusable negligence on the part of the appellee. As soon as she opened the car door, loaded as she was with bundles, she saw that the car was in motion; and yet she persisted in proceeding "rapidly out onto the platform of the car." And then, although "finding that the car was still moving and more rapidly," and though "not seeing anyone to assist her," yet, fearing "that she would be carried past her station and away from home, and feeling that she must get off," she deliberately, on the "more rapidly" moving car, "proceeded down the steps of the car toward the station platform." The result was inevitable; with her arms full of bun-

dles, she "was thrown violently down from the car steps to the platform."

It will not do to say that the appellant company was in fault. That seems evident enough. But she was herself also in fault, and cannot recover under this complaint. When she found the car in motion, she should have returned to her seat, and asked compensation of the company, if she were entitled to any, for carrying her past her station and away from her home. *Jeffersonville, etc., R. W. Co.* v. *Hendricks, Admr., supra; Reibel, Admx.,* v. *Cincinnati, etc., R. W. Co.,* 114 Ind. 476; *O'Toole* v. *Pittsburgh, etc., R. R. Co.,* 158 Pa. St. 99 (22 L. R. A. 606).

Had appellee been directed by the conductor or other trainmen in charge to come out on the platform or down on the steps; or had the car not been in motion until she reached the lower step and was about to step off, we should have a different case. As it is, she cannot recover.

The evidence and answers to interrogatories are in substantial agreement with the allegations of the complaint; and the other questions discussed by counsel are covered by what we have said of the complaint, and need not be further considered.

The judgment is reversed, with directions to sustain the demurrer to each paragraph of the complaint, and for further proceedings.

Filed April 24, 1894.

NOTE.—A very extensive review of the authorities as to injuries in getting on and off railroad trains is contained in a note to *Carr* v. *Eel River & E. R. Co.* (Cal.), 21 L. R. A. 354.

### ON PETITION FOR REHEARING.

HOWARD, J.—Counsel for appellee in their briefs on the petition for a rehearing of this case say that "The

The Toledo, St. Louis and Kansas City Railroad Co. v. Wingate.

court wholly fails to assign any force to the allegation of the complaint that appellee 'was stricken with dismay and fright and seized with fear that she would be carried past her station and away from home.'" It is claimed by counsel that "This condition of mind was caused by two things for which the appellant was responsible, namely, the moving of the train prematurely and the failure of the trainmen to meet and assist her to alight." The complaint, however, shows that appellee saw that the train was in motion before she left the interior of the car and went upon the platform. She was then in a safe place. The perturbation of mind, which the law will look upon as an excuse in one who, being suddenly called upon to choose between two dangers, by mistake selects the greater, can hardly apply to appellee. She was in a place of perfect safety, but deliberately walked into a place of danger. While the appellant should have stopped its train, should have provided a station platform within easy reach of the car steps, and should have had some one present to aid this lady, loaded with bundles as she was, to descend from the train in safety, yet we can see no excuse in all this for her rash assumption of this risk of danger. On the contrary, her knowledge of the situation makes her negligence the greater. Had she been an active, young person, and without baggage to impede the free use of her arms as she descended, it might be safe for her to alight. We did fully consider the clause in the complaint as to the dismay and fright of appellant and her fear that she should be carried past her home; but we could see no reason in this, nor can we now, why she should deliberately walk from her place of safety into this manifest danger. Neither could we see then, nor can we now, that appellant, however much at fault, was to blame for appellee's dismay and fright. Appel-

lee might well be angry with appellant for taking her away from the station; but before there could be any room for dismay or fright some danger must impend. No danger is shown from which appellee was forced to flee. She was as safe in the car as could be any passenger sitting upon one of the seats, or standing inside the door; but she herself, without compulsion or even invitation, walked out into the open danger.

Nor is it true that she did not see and know the danger which she thus deliberately took upon herself. The complaint shows that she was well acquainted with the sidetracks, the passage of trains, the proper station for passengers to alight, and that this was the station at her own home. She also knew that the trainmen assisted ladies and children to alight, and that such assistance was necessary in order to alight with safety; that the station platform was twenty-six inches below the car steps; "that passengers in alighting from said cars, at said point, were required to make a step down of said distance of twenty-six inches, and that children and female passengers could not step from the car steps to said platform on account of said distance between them, but were compelled to jump down with both feet off the step at once, or in a manner so, to their great hazard and peril, and which they could not do if unassisted, and the car was in motion, without almost certain injury."

All this she knew. She also knew that she was a woman encumbered with her clothing, and "carrying with her a goodly sized package, consisting of two pieces of carpet, rolled separately, but lashed and tied together in one bundle, and some other small packages." Instead, therefore, of being in a condition to risk the danger so apparent in her progress out upon the platform and down the car steps, she knew that she was so hampered in her freedom of movement, and in her

ability to use her hands and feet, that what might be comparatively safe for another to do was dangerous for her.

Counsel next say that the court invaded the province of the jury in drawing the inference of contributory negligence from the facts pleaded in the complaint ; and the following is cited from *Town of Albion* v. *Hetrick*, 90 Ind. 545, that ''It is only when the standard of duty is fixed and certain, or where the measure of duty is defined by law, and is the same under all circumstances, or when the negligence is so clear and palpable that no verdict could make it otherwise, that the question of negligence becomes one of law and not of fact.''

Counsel's position here seems very near to a begging of the question. We think we have shown, both here and in the original opinion, that appellee's negligence ''is so clear and palpable that no verdict could make it otherwise.'' Indeed, in the case at bar, the facts as found by the jury disclose the negligence even more clearly than it is shown in the complaint.

Nor is it necessary, as counsel seem to assume, that under the ruling here it must follow that under all circumstances it will be an act of negligence for one to enter upon or alight from a car while in motion. Some of the courts have held this doctrine, and even this court has in certain cases seemed to have gone to that extent. There is, however, no such holding here. The holding is that appellee, situated and encumbered as she was, and knowing that the train was not only in motion, but increasing its speed, knowing too that a woman could not make the descent of over two feet to the platform in safety without help when the car was in motion, and knowing also that no help was present, yet undertaking to descend unaided, was guilty of negli-

The Toledo, St. Louis and Kansas City Railroad Co. *v.* Wingate.

gence "so clear and palpable that no verdict could make it otherwise."

As well said by counsel for appellant, the opinion does not state as an abstract proposition of law, that a passenger who attempts to leave a moving train at a station is *per se* guilty of contributory negligence, regardless of all the circumstances and surroundings. The character of a complaint in a given case cannot be overlooked. Here the complaint undertakes to detail all the circumstances and surrounding facts connected with the happening of the accident. The court cannot ignore these specific allegations, but must construe the pleadings with reference to them; and, in so doing, conclude, as a matter of law, that the appellee was herself guilty of negligence, as disclosed by the facts pleaded by herself.

In this and in other jurisdictions, we are satisfied that the courts have gone further than would be necessary in order to sustain the demurrer to this complaint.

In *O'Toole* v. *Pittsburgh, etc., R. R. Co.*, 158 Pa. St. 99 (38 Am. St. Rep. 830) (22 L. R. A. 606), the court, after defining negligence to be "the absence of care according to the circumstances," said : "All experience has demonstrated that to get off a moving car is highly dangerous; therefore, it is held that such an act is negligence *per se*, and the passenger, if thereby injured, except in very rare cases, is guilty of contributory negligence and cannot recover."

In *Adams, Admr.*, v. *Louisville, etc., R. R. Co.*, 82 Ky. 603, it was found that the employes of the railroad company called out the station, and that the train was moving slowly to the depot when the intestate got off. The court said : "While it is not necessary to determine the liability of the company in failing to have a secure and safe place of egress from any of its cars whenever it may stop

at a depot, we are satisfied from the proof that the cars were in motion when the appellant's intestate attempted to leave them, and that his sad misfortune resulted from his own neglect."

A case much like the one before us was that of the *Ohio, etc., R. W. Co.* v. *Stratton*, 78 Ill. 88. There it appeared that the plaintiff and his father went out upon the platform of the car, and as the train approached the station they went down upon the steps to be ready to get off as soon as the train should stop. The son was upon the lower step and the father upon the next one above, holding him by the hand. Each of them carried some baggage. When the car came to the platform of the station, the son was about to step off, as the train seemed to stop, when suddenly the train started forward again by a violent movement, and the father was thrown upon the platform and the son under the wheels.

The court said in that case: "By their voluntary choice they selected a most dangerous place, on the steps of the car, while the train was yet in motion. Both were encumbered with baggage, which would effectually prevent them from holding on to anything to secure their safety. The position occupied was dangerous, and was taken without due care. Whether the accident was produced by any sudden, violent movement of the cars, caused by putting on or letting off brakes in the ordinary management of the train, or whether they were induced to step off, under the belief that the train had come to a halt, when it had not, it must be attributed to their own omission to observe the usual precautions, rather than to any negligence on the part of the defendant. It may have been the impression of plaintiff's father, that the train would stop at that station but a short time, and that it would be necessary to get off very quick. But this belief, however induced, could

not justify him in exposing himself and son to such great hazards.   *   *   *   Defendant had undertaken to stop its train at Salem, to let the passengers get off, and any violation of that agreement would have subjected it to damages.   A passenger has no right to attempt to get off a train when in motion, and if he undertakes to do so without the knowledge or direction of any employe of the company, it is at his peril, and he must bear the consequences, however disastrous." See generally, note to *Carr* v. *Eel River, etc., R. R. Co.* (Cal)., 21 L. R. A., at p. 358, and following pages.

A case even stronger than the case at bar is one already decided by this court, that of *Reibel, Admx.,* v. *Cincinnati, etc., R. W. Co., supra,* a case also on a demurrer to the complaint.   There it was alleged that Reibel, with five others, took passage for the town of Sunman, paying the proper fee to the conductor, who informed him that the train would stop at Sunman.   As the train approached the town the signal that it would stop was sounded, and thereupon Reibel and his fellow passengers went out upon the platform preparatory to alighting when the train should stop.   The speed of the train was slacked to six miles an hour, but the train did not come to a stop ;   and as the speed was about to be increased Reibel and his companions jumped upon the platform of the station, believing, and having good reason to believe, that they could safely so alight from the train.   The other five did alight in safety, but Reibel, notwithstanding due care on his part, was caught by his clothing and thrown under the cars and instantly killed, being at the time about twenty-one years of age.

The court, in holding that a demurrer to the complaint was correctly sustained, said :   "The general rule is, that passengers who are injured while attempting to get upon or off a railroad train while it is in motion

cannot recover for their injuries.    To this general rule, some exceptions have been recognized, one of which is where the passenger is either ordered or invited by the company or its agents to get on or off, notwithstanding the motion of the train.    But a passenger must not attempt either to get onto or off a train while it is in motion, if it be obviously dangerous to make the attempt, although he may have been advised, or even ordered, to do so by the servants of the company.    Such an attempt is at the peril of the passenger, when he is a person of ordinary intelligence and not acting under constraint.    While it is the plain duty of a railroad company to stop its train at the place of a passenger's destination long enough to permit him to get off with safety, the fact that a train is about to pass such place of destination without stopping, does not justify the passenger in incurring any serious risk by jumping from the train.    In such a contingency, the passenger's remedy is against the company for carrying him past his place of destination."
We do not think that the *Louisville, etc., R. R. Co.* v. *Crunk*, 119 Ind. 542, shows a state of facts making the conclusion of the court in that case inconsistent with the foregoing decision.

If Reibel, a young man but twenty-one years of age, was held guilty of contributory negligence by jumping from the train that, although having slowed up, was yet proceeding to carry him beyond his station, even too when he believed and had good reason to believe, that he could alight without injury, what shall we say of a woman whose skirts were much more likely to catch the cars than was Reibel's clothing, who was besides burdened with her bundles, and knew that the landing was dangerous, so that women and children could not alight in safety without help?    To hold that she was

negligent under the circumstances is very far from hold-ing that it is negligence *per se* to go upon or alight from a train when in motion.

The petition is overruled.

McCABE, J., took no part in the decision of this case. Filed December 18, 1895.