## CHICAGO, TERRE HAUTE AND SOUTHEASTERN RAILWAY COMPANY v. COLLINS.

[No. 8,483. Filed March 31, 1915. Rehearing denied June 18, 1915. Transfer denied October 13, 1915.]

1.  CARRIERS.— *Injuries to Passengers.*— *Negligence.*— *Evidence.*— Evidence that plaintiff, a girl twenty years old, was riding as a passenger on defendant's train, which was crowded with people to such an extent that passengers were standing in the aisles and on the platforms of the cars; that the train arrived at the station where plaintiff desired to alight at nine o'clock at night and stopped so that the coach in which plaintiff rode was south of a

cattle-guard and wing fence south of the station platform; that the station was not called; that fifty passengers left the train which stood at the station about three minutes; that, on learning that the station was the one at which she desired to alight, plaintiff proceeded to crowd herself down the aisle to the platform, which was crowded with passengers; that as she reached the door the train started; that she stepped down upon the platform steps and, noticing the wing fence, believed the train would stop, and thinking that its speed was slackening, stepped down a step; and that, on realizing that it was passing the depot and would not stop, and believing that it was going slow enough, she jumped and was injured; was sufficient to warrant the submission of the case to the jury on the issue of defendant's negligence. p. 575.

2. APPEAL.—*Verdict.—Evidence.—Review.*—The court on appeal in determining whether the evidence is insufficient to sustain the verdict, as showing the injury resulted from plaintiff's contributory negligence, must determine such question of contributory negligence from a consideration of the evidence most favorable to plaintiff, and plaintiff's own testimony, being the most favorable to her upon the question, must for that purpose be taken as true. p. 578.

3. CARRIERS.—*Injury to Passenger.—Alighting from Moving Train. —Contributory Negligence.*—It is not negligence *per se* for a passenger to alight from a slowly moving train, and, though there are circumstances where it may be said as a matter of law that a person in thus alighting is or is not guilty of contributory negligence, the question of one's contributory negligence in such case is ordinarily one of fact for the jury to determine. p. 578.

4. CARRIERS.—*Injury to Passengers.—Alighting from Moving Train. —Contributory Negligence.*—Ordinarily in determining whether a passenger is guilty of contributory negligence in alighting from a moving train, the speed of the train, the presence or absence of light, the place of alighting, whether the passenger is induced, invited or ordered by the trainmen to get off the train, whether there is any real or apparent emergency of peril to be met, the age and physical condition of the passenger, etc., are merely facts for the consideration of the jury. p. 580.

5. CARRIERS.—*Injury to Passengers.—Alighting from Moving Train. —Contributory Negligence.*—Where the undisputed facts taken with such of the disputed facts as are most favorable to plaintiff, lead inevitably and certainly to the conclusion that a person of ordinary prudence would not have leaped from the train, it is the duty of the court to pronounce the plaintiff guilty of contributory negligence as a matter of law. p. 580.

6. CARRIERS.—*Injury to Passenger.—Alighting from Moving Train. —Contributory Negligence.*—Plaintiff, a girl of twenty years, was

guilty of contributory negligence as a matter of law, where it appeared from the evidence most favorable in her behalf, that while riding as a passenger on defendant's train, she leaped from the train into the darkness, impelled by the mere fear that she would be carried beyond her destination, and without any knowledge as to whether the train would stop, and while it was traveling at from eight to ten miles per hour, and that there was nothing to show that she was induced or invited into a place of danger, or that she found herself facing any threatened peril. p. 581.

7. APPEAL.—*Assignment of Errors.—Waiver.*—An error assigned is waived by appellant's failure to set out in its brief, under a separate heading of such error, separately numbered propositions or points relating thereto. p. 582.

From Greene Circuit Court; *Charles E. Henderson,* Judge.

Action by Goldie Collins, by her next friend, James S. James, against the Chicago, Terre Haute and Southeastern Railway Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Webster V. Moffett* and *Lamb, Beasley, Douthitt & Crawford,* for appellant.

*William L. Cavins, William L. Slinkard* and *A. T. Mayfield,* for appellee.

CALDWELL, P. J.—Appellee recovered a judgment in the trial court for $1,650, by reason of personal injuries suffered by her in alighting from appellant's train at Midland, Indiana. The complaint is in two paragraphs. The negligence charged in the first paragraph is, in substance, the failure of appellant to stop its train at Midland Station a sufficient length of time to enable appellee to alight in safety; permitting the aisle and platform of the car to be crowded with other passengers, and thus obstructing appellee in her passage from the car; starting the train as appellee was about to step from the car, and under such circumstances permitting the car platform to become crowded so that she could not reënter the car, and thereupon materially increasing the speed of the train, whereby appellee was thrown to the station platform and injured.

By the second paragraph it is charged that the train was stopped before the car in which appellee was riding had reached the station platform; that nevertheless, she started to leave the car but was delayed by reason of the crowded condition of the aisle and car platform; that appellant failed to stop the train long enough for appellee to alight; that appellant started the train as appellee stepped onto the car platform; that believing that appellant intended. to pull the car up to the station platform and then stop it, she continued down onto the car steps, whereupon appellant, without stopping said train, increased its speed with a sudden and violent jerk, whereby she was thrown to the station platform and injured. Appellant's acts and omissions complained of in the complaint are alleged to have been negligently done and omitted respectively.

The only error assigned and not waived is the overruling of the motion for a new trial. Under such motion, it is argued that the verdict is not sustained by sufficient

1. evidence. It is urged that the evidence established affirmatively that appellee was guilty of negligence contributing to her injury as the proximate cause thereof. The evidence bearing on such issue is substantially as follows: Without contradiction, it appeared that on July 4, 1911, appellee, a girl twenty years old, was living in the home of Mrs. Henderson, at Bloomfield. On that day, she started for Midland to attend the funeral of her brother's child. At Linton she became a passenger on appellant's train, having a ticket entitling her to transportation to Midland, a few miles distant. The train included five coaches and a baggage car. By reason of persons returning from a celebration at Linton, the train was crowded, to the extent that the seats were all occupied, and there were passengers standing in the aisles, and on the platforms of the coaches. Appellee entered the rear car, but by reason of its crowded condition, she was unable to obtain a seat, and remained standing in the aisle. In due course, the

conductor took up the tickets, and left the car, and thereafter no train official entered the rear coach. The station at Midland is on the west side of the railroad. South of the platform is a narrow highway intersecting the railroad, and south of the highway are cattle guards and wing fences. The train reached Midland after nine o'clock at night, and stopped so that the rear coach was south of the cattle guards. There was a lot of evidence that Midland Station was not called. An assistant conductor testified that after the train had stopped, he stood on or near the wing fences and called the station through the windows of the rear coach. There were about fifty passengers for Midland who there left the train. Witnesses in estimating the time the train stood at Midland Station, and the speed at which it was running when appellee jumped from it, as hereinafter set out, differed somewhat, the extremes of the former being two and five minutes, and of the latter ten and twenty miles per hour. In answer to interrogatories the jury found that the train stood at the station three minutes, and that it was running eight miles an hour when appellee left it. The witnesses agreed that while appellee was standing on the platform and steps preparatory to jumping from the train, its speed increased. The answers to the interrogatories disclose that the rear coach stood eighty-five feet south of the south end of the platform, that the platform was 165 feet long, and that the point at which appellee left the train was 250 feet north of the north end of the platform. These answers are in harmony with the evidence. It thus appears that the train had run 500 feet before appellee jumped from it. A passenger who was standing on the car platform when appellee came to the platform from the car, testified that she asked if this was Midland, and being informed that it was, that she said, "I must get off here." That he told her not to undertake it; that she was preparing to jump when he placed his arm in front of her, and told her it meant death for her to jump and that he would stop the

train; that he then turned to direct a passenger to pull the bell rope, and that appellee leaped from the train as he turned. This witness was corroborated in the main by two other witnesses who were passengers. Appellee, as a witness, denied this conversation, and the jury in answer to an interrogatory found that appellee was not warned by a fellow passenger not to attempt to get off the train after it had left the station. Appellee's testimony in her own behalf is in part substantially as follows: Midland Station was not called. After the train had stopped, she learned from a fellow passenger within the car, by inquiry, that the stop was for Midland. She then proceeded to crowd her way down the aisle to the front platform. The platform was crowded with passengers. As she reached the door the train started. She proceeded to the first or second step, and discovered that the car was passing the cattle guards, and she thereby knew that the station platform had not been reached. She hesitated, thinking that the train would stop at the station platform. She believed the train was checking its speed, and thereupon stepped down a step. The train did not stop. She held to the north handhold with her right hand, and had a bundle in her left hand, consisting of a shirt waist wrapped in paper. "I waited until just as the train passed the depot, and thinking it was going slow enough, and thinking I was getting off on the platform jumped." As she jumped the train increased its speed with a jerk. "Q. You stepped off or jumped off? A. Jumped off, thinking I was jumping on the platform." From shortly after the train passed the cattle guards "it all looked the same, and I thought it was the platform." There were grown people and children on the car steps as she jumped off. Appellee had made a former trip to Midland over appellant's railroad, arriving at night, and leaving in the morning. She knew that the station platform extended both north and south of the depot. On her cross-

examination, she stated that it was dark when the train reached Midland. Being asked whether she reëntered the car after going down the steps, she replied: "I could not get back in the train." Being asked whether she started back in the train, she answered: "I looked back and people were crowded behind me and children pushing against me." She could not see the ground. Everything looked smooth and dark alike, and she thought she was jumping on the platform. She thought the car had just passed the depot. Appellee in fact jumped into a side ditch. Her injuries were serious, among them the fracture of both bones of the right leg about three inches above the ankle, and from which she had not entirely recovered at the time of the trial nine months later.

Considering the crowded condition of the train, the darkness, the apparent failure properly to call the station, the evidence as to the length of the stop, under the circumstances, and the evident lack of attention given appellee, the case was properly submitted to the jury on the

2. issue of appellant's negligence. The question of contributory negligence must be determined from a consideration of the evidence most favorable to appellee. Down to the point in the evidence, when appellee was preparing to leap from the train, there is no material contradiction. That she voluntarily leaped from the train is not denied. There is controversy respecting the circumstances immediately preceding and attending that transaction. As to these circumstances, appellee's own testimony is the most favorable to her cause, and in determining such controversy, her testimony must be taken as the true account of such circumstances.

In discussing the responsibility incurred by a passenger in jumping from a moving train, the language used by the courts of this State, on first view, indicates a lack

3. of harmony in the conclusion reached. The expression, however, in each instance, must be construed

with reference to the facts of the particular case, and thus it will be discovered that the disparity is apparent rather than real. Thus, it is not negligence *per se* for a passenger to alight from a slowly moving train. *Lake Erie, etc., R. Co.* v. *Huffman* (1912), 177 Ind. 126, 97 N. E. 434, Ann. Cas. 1914 C 1272; *Louisville, etc., R. Co.* v. *Bean* (1893), 9 Ind. App. 240, 36 N. E. 443. "It is carelessness in passengers to attempt to leave the train whilst it is in motion." *Jeffersonville, etc., R. Co.* v. *Hendricks* (1866), 26 Ind. 228. This language was modified on a subsequent appeal. See *Jeffersonville, etc., R. Co.* v. *Hendricks* (1872), 41 Ind. 48, 66, the court saying: "It seems to us that the above proposition of law was too broadly stated, and should have been modified." The court further said that the true rule is as declared in *Evansville, etc., R. Co.* v. *Duncan* (1867), 28 Ind. 441, 447, 92 Am. Dec. 322, as follows: "If the leap was made under such circumstances that a person of ordinary caution and care would not have apprehended danger therefrom, then it was not such an act of carelessness as would relieve the defendant from responsibility otherwise resting upon it." In *Pittsburgh, etc., R. Co.* v. *Miller* (1904), 33 Ind. App. 128, 131, 70 N. E. 1006, this court said: "It is a general proposition deducible from the authorities that to get off a passenger train before it is brought to a standstill at the station is contributory negligence. An exception arises where the act is induced by the company through its agents." Other exceptions indicated are where the passenger is directed by the trainmen to alight, and where his action is affected by his tender age or other incapacity. Perhaps it would not be possible to frame a general rule applicable to all situations. There are circumstances under which it may be said as matter of law that a person in alighting from a moving train is thereby guilty of contributory negligence. *Louisville, etc., R. Co.* v. *Crunk* (1889), 119 Ind. 542, 21 N. E. 31, 12 Am. St. 443; *Harris* v. *Pittsburgh, etc., R. Co.* (1904), 32 Ind.

App. 600, 603, 70 N. E. 407; *Dunning* v. *Lake Erie, etc., R. Co.* (1906), 38 Ind. App. 91, 77 N. E. 1049. Perhaps also the circumstances might be such that it would be held as matter of law that a person in stepping from a moving train was not guilty of contributory negligence. It would seem, however, that the question of whether a passenger in jumping or stepping from a moving train is guilty of negligence contributing to an injury thereby received, is ordinarily a question of fact for the jury. In determining such question in the ordinary case, the speed of the 4. train, the presence or absence of light, the place of alighting, whether the passenger is induced, invited or ordered by the trainmen to get off the train, whether there is any emergency or apparent emergency of peril to be met, the age and physical condition of the passenger, etc., are merely facts for the consideration of the jury. *Lake Erie, etc., R. Co.* v. *Huffman, supra; Louisville, etc., R. Co.* v. *Crunk, supra; Reibel* v. *Cincinnati, etc., R. Co.* (1888), 114 Ind. 476, 17 N. E. 107; *Harris* v. *Pittsburgh, etc., R. Co., supra;* 5 R. C. L. 36, *et seq.;* 6 Cyc. 648; *Carr* v. *Eel River, etc., R. Co.* (1893), 21 L. R. A. 354, note; *Hoylman* v. *Kanawha, etc., R. Co.* (1909), 22 L. R. A. (N. S.) 741, note; *Pennsylvania Co.* v. *Marion* (1890), 123 Ind. 415, 23 N. E. 973, 18 Am. St. 330, 7 L. R. A. 687. It follows that each case must be determined from a consideration of its own facts. *Harris* v. *Pittsburgh, etc., R. Co., supra.*

While, as indicated, the question of contributory 5. negligence is ordinarily one of fact for the jury, yet applying general principles to this case, if the undisputed facts taken with such of the disputed facts as are most favorable to appellee lead inevitably and certainly to the conclusion that a person of ordinary prudence situated and circumstanced as was appellee would not have leaped from the train, then it is our duty to pronounce appellee guilty of contributory negligence. *Louisville, etc., R. Co.* v. *Bean, supra; Harris* v. *Pittsburgh, etc., R. Co., supra.*

Appellee, while within the car and consequently in a place of safety ascertained that the train was moving. Without any knowledge of whether it would stop, she came to the platform and steps. From such position, she voluntarily leaped from the train when it was moving at least ten miles per hour as shown by the evidence, and eight miles per hour as found by the jury, and without any accurate knowledge as to the actual speed of the train. She knew that she was leaping into the darkness and that she could not ascertain definitely the nature of the place towards which she was jumping. There is nothing to indicate that she was induced or invited into a place of danger, or that she found herself facing any threatened peril, or at least that any such danger or peril induced her to leap from the train. See *Louisville, etc., R. Co.* v. *Lamb* (1889), 6 L. R. A. 195, note. Apparently she was impelled by the mere fear that she would be carried beyond the station at which she desired to leave the train. Such a fear was not sufficient to justify her in leaping from the train under the circumstances here presented. If wrongfully carried beyond her station, she would not have been without her remedy. *Jeffersonville, etc., R. Co.* v. *Hendricks, supra; Reibel* v. *Cincinnati, etc., R. Co., supra; Harris* v. *Pittsburgh, etc., R. Co., supra; Toledo, etc., R. Co.* v. *Wingate* (1895), 143 Ind. 125, 37 N. E. 274, 42 N. E. 477.

In our judgment the evidence shows affirmatively that appellee was guilty of contributory negligence, and that as a consequence the judgment must be reversed. See *Dunning* v. *Lake Erie, etc., R. Co., supra; Reibel* v. *Cincinnati, etc., R. Co., supra; Jeffersonville, etc., R. Co.* v. *Swift* (1866), 26 Ind. 459; *Pennsylvania Co.* v. *Hixon* (1894), 10 Ind. App. 520, 38 N. E. 56; *Pittsburgh, etc., R. Co.* v. *Miller, supra; Evansville, etc., R. Co.* v. *Duncan* (1867), 28 Ind. 441; *Toledo, etc., R. Co.* v. *Wingate, supra.*

Certain instructions are perhaps justly criticised, but as the questions respecting them may not arise on a retrial,

we do not consider them. The judgment is reversed with instructions to sustain the motion for a new trial, and to grant appellee permission to amend the complaint if desired.

## On Petition for Rehearing.

CALDWELL, J.—Appellant, on petition for a rehearing, earnestly insists that the court erroneously held by the original opinion that appellant waived the assignment that the court erred in overruling the motion for judgment on the answers of the jury to the interrogatories notwithstanding the general verdict. Clause 5, Rule 22 provides, among other things, that appellant's brief shall contain "under a separate heading of each error relied on, separately numbered propositions or points, stated concisely", etc. An inspection of appellant's original brief readily discloses a complete failure to comply with the quoted provision of the rule. Under such circumstances, this court was justified in concluding that appellant did not rely on that assignment, and to treat it as waived. *Stauffer* v. *Hulwick* (1911), 176 Ind. 410, 96 N. E. 154, Ann. Cas. 1914 A 951; *Stewart* v. *Stewart* (1911), 175 Ind. 412, 94 N. E. 564; *Owen* v. *Harriott* (1911), 47 Ind. App. 359, 94 N. E. 591; *Town of Clarksville* v. *Ohio Falls Mfg. Co.* (1914), 56 Ind. App. 198, 105 N. E. 67. Petition overruled.

NOTE.—Reported in 108 N. E. 377, 1135. As to duties of railroad companies to passengers alighting from their trains, see 50 Am. Rep. 277. Contributory negligence in alighting from moving train where act is obviously dangerous, see 1 Ann. Cas. 778; 17 Ann. Cas. 1154. Contributory negligence in alighting from moving train by advice or command of carrier's servant, see 1 Ann. Cas. 781. See, also, under (1) 6 Cyc. 585, 612, 648; (2) 3 Cyc. 348; (3, 5, 6) 6 Cyc. 648; (4) 6 Cyc. 649; (7) 3 C. J. 1410, 1421; 2 Cyc. 1014.